UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS JASON WAY, et al.,<br><br>　　　　Defendants. | No. 1:14-cr-00101-DAD-BAM<br><br>ORDER ON VARIOUS PRETRIAL MOTIONS<br><br>(Doc. Nos. 323, 324, 326, 364, 367, 372, 373, 391, 450) |

　　　　Defendant Douglas Jason Way is charged by way of a second superseding indictment with conspiracy to manufacture, distribute and/or possess with intent to distribute XLR11 and AM-2201 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; manufacture of XLR11 and AM-2201 and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; distribution of XLR11 and AM-2201 and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; attempted possession with intent to distribute XLR11 and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 18 U.S.C. § 2; conspiracy to possess a listed chemical with reason to know of its wrongful intended use in violation of 21 U.S.C. §§ 841(c)(2) and 846; five counts of importing merchandise contrary to law and aiding and abetting the same in violation of 18 U.S.C. §§ 545 and 2; conspiracy to defraud and commit offenses against the United States in

1

violation of 18 U.S.C. § 371; and introduction into interstate commerce of misbranded drugs and aiding and abetting the same in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and 18 U.S.C. § 2. (Doc. No. 196.) Pending before the court are various pre-trial motions filed by both the government and the defendant. (Doc. Nos. 323, 324, 326, 364, 367, 372, 373, 391.) On February 16, 2018, those motions came before the court for hearing. Assistant United States Attorney Karen Escobar appeared at that hearing on behalf of the government. Attorney W. Scott Quinlan appeared on behalf of defendant Way. Having considered the parties' briefing and having heard oral argument, the court issues the following order.[1]

## DISCUSSION

**A. Government's Motion to Exclude Testimony of Potential Defense Expert**

The court first addresses the government's motion to exclude the testimony of Dr. Arthur L. Berrier, a potential defense expert witness. (Doc. No. 323.) Dr. Berrier was employed as a chemist at the Office of Forensic Sciences within the Drug Enforcement Administration (DEA).[2] (*Id.* at 3.) The government argues that Dr. Berrier's testimony is inadmissible because he is not an expert in the field of chemical structures or substantial structural similarity and that, in any event, he has never offered an opinion on XLR11, the substance at issue in this case. Defendant contends that as part of his defense at trial, he intends to offer evidence that there is disagreement among experts as to whether XLR11 is "substantially similar" to JWH-018.[3] (Doc. No. 392 at 3.) If XLR11 and JWH-018 are not substantially similar, defendant argues that he must be acquitted under the Analogue Act.

---

[1] The court also addresses defendant's motion for reconsideration, filed after oral argument was heard. (Doc. No. 450.)

[2] In a supplemental brief, the government states that Dr. Berrier remains employed by the DEA but that he is currently on administrative leave. (Doc. No. 371 at 1 n.1.)

[3] On March 1, 2011, JWH-018 was temporarily controlled in Schedule 1 of the Controlled Substances Act. Schedules of Controlled Substances: Temporary Placement of Five Synthetic Cannabinoids Into Schedule I, 76 Fed. Reg. 11075-01. Its status as a Schedule I substance was made permanent on July 9, 2012. Food and Drug Administration Safety and Innovation Act, Pub. L. No. 112-144, § 1152, 126 Stat. 993, 1131 (2012). The government's theory in this case is that XLR11 is substantially similar to JWH-018, and therefore became a controlled substance analogue when JWH-018 became a controlled substance. (*See* Doc. No. 390 at 3.).

2

Before admitting scientific testimony, this court has a "gatekeeping obligation" to ensure that "any and all scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In arguing that Dr. Berrier is not qualified to testify on this issue, the government contends that "[w]hile Berrier has expertise in the field of chemical analysis and chemical identification, he is not an expert in the field of chemical structures and substantial structural similarity." (Doc. No. 323 at 4.) The government cites several cases in support of this argument. However, those decisions do no more than recite the familiar rule that an expert must have "appropriate qualifications—i.e., some special knowledge, skill, experience, training or education on that subject matter." *See, e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citing Fed. R. Evid. 702). The cases do not support the government's attempt to draw such fine-grained distinctions among specialties within the field of chemistry. Dr. Berrier possesses a Ph.D. in organic chemistry, and has 22 years of experience in the field. (Doc. No. 323-2 at 5.) He has been employed as a senior research chemist at DEA for over a decade, and as part of his job he conducts visual analysis of molecules. (*Id.* at 5–7.) Both in the course of his work and as a witness in previous trials, Dr. Berrier has opined specifically on the structural similarity between molecules. (*Id.*) The court is satisfied that Dr. Berrier possesses the necessary knowledge, skills, experience, training, and education to provide such expert testimony in this case.

The government next argues that to the extent Dr. Berrier wishes to testify about UR-144, that testimony should be excluded. This is so, the government contends, because defendant is not charged with any conduct related to the manufacture, distribution, possession or use of UR-144, rendering any evidence related to the similarity between UR-144 and JWH-018 irrelevant at defendant's trial.[4] To some extent, the court agrees. As the court currently understands the defense's position, Dr. Berrier is prepared to testify that neither UR-144 nor XLR11 are substantially similar to JWH-018. However, because the defendant is not charged with any conduct related to UR-144, Dr. Berrier's testimony as to UR-144 would be relevant if—and only

---

[4] The court does not, however, that the second superseding indictment itself alleges that XLR11 is also known as 5-F-UR-144. (Doc. No. 196 at 2.)

if—Dr. Berrier can also provide testimony that UR-144 and XLR11 are substantially similar to one another. *See* Fed. R. Evid. 104(b). If Dr. Berrier can competently testify to that effect, and given Dr. Berrier's conclusion that UR-144 and JWH-018 are not substantially similar, then it may be that he could testify that he believes XLR11 and JWH-018 are also not substantially similar to one another and explain the basis for that opinion.[5] If he is unable to provide such a link to XLR11, the court finds any testimony from Dr. Berrier as to UR-144 would be irrelevant to the present case and would properly be excluded.

The government also argues that Dr. Berrier should not be permitted to testify as to any similarity between JWH-018 and XLR11 because, "Dr. Berrier has never opined on XLR11." (Doc. No. 323 at 7.) Thus, "[a]ny request by the defense to call him as an expert to render an opinion on this substance would be an attempt to elicit a personal opinion, without basis to represent whether such an opinion has been formed." (*Id.*) As discussed above, however, the court finds Dr. Berrier to be well qualified to testify on structural similarities between molecules. The fact that he has not previously opined on the particular substance in this case is not disqualifying, as long as his "reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993); *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007).

Finally, the government moves to exclude certain evidence under the deliberative process privilege. First, the government seeks exclusion of "any written or oral statements, analysis, opinions, and/or conclusions that Dr. Berrier would have made with regard to XLR11 or AM-2201." (Doc. No. 323 at 9.) The government also seeks to exclude internal DEA deliberations associated with its scientific determinations about UR-144. To qualify as protected by the deliberative process privilege, "a document must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d

/////

---

[5] At the very least, under these circumstances such testimony would be circumstantial evidence relevant to consideration of the charges brought against defendant here.

1114, 1117 (9th Cir. 1988) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).

The court is presently unaware of any written or oral statements, analyses, opinions, and/or conclusions that Dr. Berrier has made with regard to XLR11 or AM-2201, the substances at issue in this case. At least as to XLR11, the government appears to agree. (See Doc. No. 323 at 7 ("Dr. Berrier has never opined on XLR11").) The court is therefore uncertain whether the materials the government seeks to exclude presently exist in a form that could potentially be admitted at trial. Because the government has not specifically identified documents or other materials it seeks to exclude from evidence, the court will deny the government's motion to exclude evidence pursuant to the deliberative process privilege. The denial of the government's motion is without prejudice to any objection being raised at trial if the government objects to the introduction of specific evidence.

As to evidence relating to DEA's determination that UR-144 was a controlled substance analogue, defendant argues that any deliberative process privilege with respect to that determination has been waived by the government in prior litigation. The undersigned notes that courts to have addressed this precise issue in the past have concluded that the government has waived the privilege with respect to this information. *See United States v. Broombaugh*, No. 14-40005-10-DDC, 2017 WL 2734636, at *2 (D. Kan. June 26, 2017) ("[E]ven if the subject matter of these emails and the corresponding trial testimony was protected, the DEA long ago waived this privilege by disclosing the emails as *Brady* material in other cases."); *United States v. $177,844.68 in U.S. Currency*, No. 2:13-CV-100-JCM-GWF, 2015 WL 4227948, at *11–12 (D. Nev. July 10, 2015) ("[T]he Government has waived the privilege by voluntarily disclosing the emails and Dr. Berrier's opinion regarding UR–144 as *Brady* material in other actions."). Accordingly, the government's motion to exclude the testimony of Dr. Berrier on this ground will be denied.[6]

---

[6] Because the court declines to exclude Dr. Berrier's testimony, the court also rejects the government's request that defense counsel be precluded from cross-examining Dr. Coop regarding Dr. Berrier and his opinions. (Doc. No. 371.)

5

**B.      Government's Motion to Preclude Certain Defenses and Arguments**

The government next moves to preclude defendant from advancing several defenses at trial, namely mistake of law, entrapment by estoppel, and advice of counsel. (Doc. No. 324.) The court addresses each defense in turn below.

       1.      <u>Mistake of Law</u>

In defining the *mens rea* requirements for prosecutions under the Analogue Act, the Supreme Court has laid out two possible prongs by which the government can prove the Act's knowledge requirement. Under prong one, "it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance." *McFadden v. United States*, ___ U.S. ___, 135 S. Ct. 2298, 2305 (2015). "Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *Id.*

Under this framework, the viability of a mistake of law defense depends upon the method by which the government opts to prove a defendant's knowledge. If the government elects to rely on prong one under *McFadden*, then mistake of law may be a viable affirmative defense because "the Government must prove that a defendant knew that the substance in question was 'a controlled substance' under federal law." *Id.* at 2306 n.3; *see also United States v. Makkar*, 810 F.3d 1139, 1146 (10th Cir. 2015); *United States v. Reulet*, No. 14-40005-DDC, 2016 WL 126355, at *5 (D. Kan. Jan. 11, 2016) (denying the government's motion to preclude a mistake of law defense and explaining that "if the government strives to prove knowledge by showing defendants knew they possessed a substance controlled by the CSA or Analogue Act, evidence and argument that defendants did not know the substance was controlled by those laws would be relevant"), *on reconsideration in part*, 2016 WL 191883 (D. Kan. Jan. 14, 2016).[7] Alternatively, if the

---

[7] For whatever reason, the Tenth Circuit in *Makkar* and the district court in *Reulet* refer to prong one when discussing what the Supreme Court referred to as prong two in *McFadden*. In this order the court will refer to the prongs consistent with the manner in which the Supreme Court referred to them..

government elects to rely upon prong two of *McFadden*, mistake of law would not be a valid defense because under such circumstances, "[a] defendant need not know of the existence of the Analogue Act to know that he was dealing with 'a controlled substance.'" *McFadden*, 135 S. Ct. at 2305. Here, the court is uncertain whether the government intends to proceed at trial by relying on prong one, prong two, or both in establishing the requisite mental state of the defendant. Accordingly, the government's motion to preclude a mistake of law defense as to the Analogue Act charges is denied without prejudice.

      2.      <u>Entrapment by Estoppel</u>

Next, the government moves to preclude defendant from advancing an entrapment by estoppel defense. "Entrapment by estoppel is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law." *United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004) (quoting *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109 (9th Cir. 2000)) (internal quotation marks omitted). In order to establish entrapment by estoppel, a defendant must show that

> (1) an authorized government official, empowered to render the claimed erroneous advice, (2) who has been made aware of all the relevant historical facts, (3) affirmatively told him the proscribed conduct was permissible, (4) that he relied on the false information, and (5) that his reliance was reasonable.

*Id.* (internal quotation marks and citations omitted).

In arguing that the defendant should be precluded from asserting entrapment by estoppel, the government devotes its briefing primarily to alleged factual deficiencies of any such defense proffered in this case under the test in *Batterjee*. (*See, e.g.*, Doc. No. 324 at 24) ("Way cannot show that he reasonably relied on erroneous advice . . . [n]or can he show that he consulted with a government official before he decided to engage in the criminal activity."). However, the government has not cited to any case holding that, as a matter of law, an entrapment by estoppel defense is unavailable in prosecutions under the statutes at issue here. Indeed, at least one court has entertained such a defense in a case such as this one. *See United States v. Carlson*, 810 F.3d 544, 554 (8th Cir. 2016) (considering whether a defendant convicted under the Analogue Act had produced sufficient evidence to warrant an entrapment by estoppel defense). Whether the

defendant is entitled to a jury instruction regarding entrapment by estoppel is a matter to be determined based upon the evidence adduced at trial.[8] Accordingly, the government's motion will be denied without prejudice.

### 3. Advice of Counsel

The government also moves to preclude a defense based upon advice of counsel. "Advice of counsel is not a defense per se to a criminal case, rather, it is circumstantial evidence of good faith intent to comply with the law." *United States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1110 (E.D. Cal. 2008), *aff'd sub nom. United States v. Montes*, 421 Fed. App'x 670 (9th Cir. 2011); *see also United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010) ("An advice-of-counsel instruction requires the defendant show that he made a full disclosure of all material facts to his attorney and that he then relied 'in good faith on the specific course of conduct recommended by the attorney.'") (quoting *United States v. Ibarra–Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987)). However, reliance upon advice of counsel "is only applicable where it may negate willful violation of the law." *United States v. Ragsdale*, 426 F.3d 765, 778 (5th Cir. 2005).

As with the government's motion to preclude a mistake of law defense, the court finds this motion to be premature. The analysis by the district court in *Reulet* is persuasive in this regard:

> The Court reads *McFadden* and *Makkar* to impose a burden on the government to prove that defendants knew they possessed one of two things: (A) a substance that both was substantially similar in chemical structure to a controlled substance and had, or was represented or intended to have, a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to a controlled substance; or (B) a substance that was controlled by the Controlled Substances Act (CSA) or Analogue Act. Thus, evidence and argument that goes to either one of these two things is fair game. . . If the government strives to prove knowledge by showing defendants knew they possessed a substance controlled by the CSA or Analogue Act, evidence and argument that defendants did not know the substance was controlled by those laws would be relevant. The government's motion to exclude "ignorance of the law" or "mistake of law" arguments is denied.

2016 WL 126355, at *5. On that same basis, the court in *Reulet* denied the government's motion to exclude defendant's arguments related to ignorance of the law or mistake of law. Similarly,

---
[8] The court notes that at this point it is aware of no such evidence and the defense has not brought any evidence that would support such a defense to the court's attention.

8

here, evidence as to the advice a defendant received from his counsel is potentially relevant to prove that the defendant attempted in good faith to comply with the requirements of the Analogue Act. Because the government has not specified how it intends to prove knowledge in its case-in-chief, the government's motion to preclude reliance on the advice of counsel by the defendant in this case will also be denied without prejudice.

**C.     Government's Motion to Exclude Non-Self-Inculpatory Hearsay Statements**

Next, the government moves to exclude from introduction into evidence defendant's non-self-inculpatory hearsay statements. (Doc. No. 326.) The government avers that it may introduce portions of defendant's statements at trial, but argues that the non-self-inculpatory portions of those statements are inadmissible.

When offered by the government, self-inculpatory statements by a defendant are statements of a party-opponent, and are not hearsay. Fed. R. Evid. 801(d)(2); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). By the same token, the non-self-inculpatory portions of such statements are inadmissible hearsay. *Ortega*, 203 F.3d at 682 (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)). Defendant argues that if these self-inculpatory statements are admitted, then pursuant to Federal Rule of Evidence 106, "[d]efendant is allowed to introduce other parts of that statement or any other writing that will place matters in context, when the statement offered is misleading." (Doc. No. 388 at 2.)

The defendant's argument in this regard is unpersuasive. Rule 106, the so-called rule of completeness, "does not compel admission of otherwise inadmissible hearsay evidence," such as non-self-inculpatory statements. *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996); *see also United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (stating that the introduction of an exculpatory statement without subjecting a defendant to cross-examination is "precisely what the hearsay rule forbids"). Accordingly, the government's motion to exclude the defendant's self-inculpatory statements from evidence will be granted.

**D.     Defendant's Motion to Dismiss Counts of Second Superseding Indictment**

Defendant has moved to dismiss certain counts of the second superseding indictment. The court addresses each argument below.

9

1. Duplicitous Pleading

Defendant seeks dismissal of counts one, two, three, five, and twelve on the ground of duplicity. "An indictment is duplicitous where a single count joins two or more distinct and separate offenses." *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001) (citing *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976)), *overruled in part on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc).

In this case, however, the court need not decide whether the second superseding indictment contains duplicitous counts because dismissal is not an appropriate remedy for a duplicitous indictment. Rather, a defendant may be convicted of a duplicitous count so long as "(1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *Id.* Thus, defendant may move to require the prosecution to elect between the charges in a particular count, or else may seek an appropriate jury instruction. *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981). No basis exists to dismiss any of the counts of the second superseding indictment for duplicity.

2. Disjunctive Pleading

Next, defendant moves for dismissal of counts one, two, three, five, eleven, and twelve on the basis that those counts are pleaded disjunctively. Stated differently, defendant argues that the indictment may not plead essential elements of the crime "in the alternative." (Doc. No. 364 at 4.)

Defendant provides no binding authority for the proposition that the counts of the second superseding indictment are subject to dismissal because they are disjunctively pleaded. In the Ninth Circuit, "a legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and to enable him to plead double jeopardy." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000). Having examined the second superseding indictment, the court agrees with the ruling of the assigned magistrate judge who, in denying defendant's motion for a bill of particulars, rejected
/////

10

defendant's argument as to the disjunctive allegations and found that the second superseding indictment was sufficient. (*See* Doc. No. 356.)

### 3. Insufficient *Mens Rea* Allegation

Defendant next moves to dismiss counts one, two, three, four, and five, arguing that these counts are deficient because the *mens rea* element is inadequately pleaded. In determining whether an indictment should be dismissed because one or more of the elements is not pleaded, the Ninth Circuit has provided the following test:

> An indictment will withstand a motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge."

*United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quoting *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988)). In general, it is "sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotation marks and citation omitted).

As stated above, the second superseding indictment alleges that the defendant engaged in the conduct described in counts one through three "knowing that the substances were intended for human consumption." This language closely tracks the statutory language found in 21 U.S.C. § 813. Defendant has offered no explanation as to how this language has prevented the defendant from preparing an effective defense to the charges. Under similar circumstances, courts confronting this issue post-*McFadden* and have concluded that such language in an indictment is sufficient to survive a motion to dismiss. *United States v. Nahquaddy*, No. 17-CR-49, 2017 WL 2275008, at *3 (E.D. Wis. May 9, 2017), (holding that "although the indictment lacks the specificity required of a jury instruction, it alleges that [the defendant] knowingly conspired to distribute a controlled substance, namely analogues of Schedule I controlled substances"); *report and recommendation adopted sub nom. United States v. Oshkosh*, 2017 WL 2274483 (E.D. Wis.

May 24, 2017); *United States v. Galecki*, No. 2:15-cr-00285-KJD-PAL, 2016 WL 8732504, at *3 (D. Nev. Sept. 19, 2016) (finding that an indictment charging that the defendant acted "knowing that the substance was intended for human consumption as provided by 21 U.S.C. Section 813" was sufficient to survive a motion to dismiss), *report and recommendation adopted*, 2017 WL 1330193 (D. Nev. Apr. 5, 2017).[9] The court finds these prior cases persuasive.

For these reasons, defendant's motion to dismiss counts one, two, three, four, and five of the second superseding indictment will be denied.

**E.    Defendant's Motion to Strike Reference to XLR11 and Enjoin Prosecution of XLR11 as an Analogue**

Defendant moves to strike as surplussage or dismiss any reference to XLR11 as an analogue, and to enjoin XLR11 prosecution as an analogue. (Doc. No. 367.)  Defendant argues that because XLR11's status as a controlled substance analogue was not published in accordance with the rulemaking requirements of the Administrative Procedure Act ("APA"), criminal prosecution of the defendant is unlawful.  In short, defendant argues that DEA is required under the APA to publicly disclose lists of those substances determined to be controlled substance analogues.

Defendant's argument is premised on the notion that internal monographs prepared by DEA are themselves "rules" subject to the publishing requirements of the APA, either through notice-and-comment proceedings or by publication in the Federal Register.  Defendant has cited no authority for this proposition, nor is the court aware of any decision so holding.  Indeed, such an approach would appear to undermine the purpose of the Analogue Act, which "was to prohibit innovative drugs *that are not yet listed* as controlled substances." *United States v. Washam*, 312 F.3d 926, 933 (8th Cir. 2002) (emphasis added) (citing *United States v. McKinney*, 79 F.3d 105, 107 (8th Cir. 1996)); *see also* 131 Cong. Rec. 19,114–15 (statement of Sen. Hawkins) ("[A]s we

---

[9]  The cases cited by defendant are of no avail since they address what the government must ultimately prove at trial, not the sufficiency of the indictment. *United States v. Oz*, No. CR 13-00273 (SRN/FLN), 2017 WL 410534, at *4–5 (D. Minn. Jan. 30, 2017); *United States v. Al-Omari*, No. CR 12-1766-MV, 2016 WL 9777153, at *3–5 (D.N.M. June 3, 2016). As discussed above, indictments are not held to such exacting scrutiny when challenged by a motion to dismiss.

12

have discovered, as fast as the Government outlaws designer drugs, the chemists can synthesize new ones."); 131 Cong. Rec. 18,938 (statement of Rep. Lungren) (stating that the bill was meant to address "the time lag between the production of these new designer drugs and their subsequent control under the Controlled Substances Act"). The fact that the government is not required to publish lists of controlled substance analogues is precisely how the statute was intended to operate, given that the statute was designed to avoid the delay inherent in such publication. Defendant's motion to strike or enjoin prosecution which is based upon XLR11 as an analogue will therefore be denied.

### F. Defendant's Motion to Dismiss

Defendant next provides notice that upon the conclusion of the prosecution's case-in-chief, and again at the conclusion of the receipt of all evidence, he will move to dismiss all charges brought against him under the Analogue Act. (Doc. No. 372.) Defendant states that he will argue the Analogue Act is unconstitutionally vague under the decision in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015). However, because defendant states that he is not presently moving for dismissal on these grounds, the court will deny his motion to dismiss based upon his promised argument as premature. This denial is without prejudice to the motion being renewed at a later date.

### G. Defendant's Motions to Exclude Certain Evidence and for a Pretrial *Daubert* Hearing

Defendant next moves for a *Daubert* hearing with respect to the reliability of expert testimony to be presented by the government. (Doc. No. 373.) Defendant contends that any expert testimony the government seeks to offer to the effect that XLR11 is "substantially similar" to JWH-018—either in terms of its chemical structure or its pharmacological effect—must be excluded under *Daubert*.

In Analogue Act prosecutions across the country, multiple trial courts have been called upon to determine whether scientific testimony related to the structural similarity of substances such as XLR11 is admissible under *Daubert*. Nearly every court to have confronted that issue has determined that such scientific testimony is admissible. *See, e.g.*, *United States v. Williams*, No.

13-00236-01, 2017 WL 1856081, at *3 (W.D. Mo. Apr. 7, 2017) (recommending denial of defendant's motion to exclude expert testimony regarding XLR11's substantial similarity to a scheduled controlled substance), *report and recommendation adopted*, 2017 WL 1683068 (W.D. Mo. May 2, 2017); *United States v. Reulet*, No. 14-40005-DDC, 2015 WL 7776876, at *9 (D. Kan. Dec. 2, 2015) (permitting the testimony of a DEA chemist and a DEA pharmacologist to assist the jury in determining whether a substance is substantially similar to a controlled substance); *United States v. Lawton*, 84 F. Supp. 3d 331, 339 (D. Vt. 2015) ("[E]xpert opinions from DEA scientists, as offered by the government in this case, are widely accepted by courts in Analogue Act cases.") (internal quotation marks and citation omitted).[10] As defendant concedes, many of these courts have admitted such expert testimony without conducting a *Daubert* hearing. *United States v. Hoyt*, No. 2:14CR00001, 2014 WL 5023093, at *3 (W.D. Va. Oct. 8, 2014); *United States v. Bays*, No. 3:13-CR-0357-B, 2014 WL 3764876, at *7 (N.D. Tex. July 31, 2014) ("DEA opinions and methodology are widely accepted by courts."). To the extent defendant disputes the conclusions drawn by the government's expert witnesses, the court concludes that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate methods of resolving that dispute. *Daubert*, 509 U.S. at 596. Accordingly, defendant's motion for a pretrial *Daubert* hearing will be denied.

---

[10] The court does note that in *The Smoke Shop, LLC v. United States* the court stated in dicta that "the overwhelming weight of opinion in the scientific community is that the chemical structures of UR–144 and XLR–11 are not substantially similar to the chemical structure of JWH–018.", 949 F. Supp. 2d 877, 879 (E.D. Wis. 2013). This statement has been called into question by other courts. *See United States v. Riley*, No. 2:12-CR-00478-JAD, 2014 WL 537013, at *6 (D. Nev. Feb. 7, 2014); *United States v. Carlson*, No. CRIM. 12-305 DSD/LIB, 2013 WL 5125434, at *30 (D. Minn. Sept. 12, 2013), *aff'd*, 810 F.3d 544 (8th Cir. 2016). The undersigned is likewise unpersuaded by the quoted language in *The Smoke Shop*. In any event, the language in *The Smoke Shop* is inapposite because, somewhat surprisingly, the determination of whether a substance constitutes a controlled substance analogue has been found to be a factual issue to be determined by the jury at trial, rather than a matter of consensus within the scientific community. *See United States v. Long*, 15 F. Supp. 3d 936, 942 (D.S.D. 2014) ("A disagreement regarding the degree of similarity between a controlled substance and its alleged analog, as the expert for Long and the Government have, is for the jury to decide."); *United States v. Fedida*, 942 F. Supp. 2d 1270, 1279 (M.D. Fla. 2013) ("A reasonable layperson who examines the two-dimensional drawings of the chemical structures of UR–144, XLR–11, and JWH–18 could plausibly conclude that such substances are substantially similar.").

**H.     Government's Motion for Reciprocal Discovery and Exclusion of Defense Expert Dr. Gregory Dudley[11]**

The court next addresses the government's motion to exclude the testimony of defense expert Dr. Gregory Dudley or, in the alternative, request for a *Daubert* hearing as to Dr. Dudley's qualifications. (Doc. No. 391.)

The government argues that any pharmacology related testimony from Dr. Dudley should be excluded "as he is not an expert in pharmacology, but is instead an expert in chemistry." (*Id.* at 1.) As with Dr. Berrier, however, the court is not persuaded that the distinction drawn by the government merits excluding Dr. Dudley's testimony from defendant's trial. Dr. Dudley possesses at least some experience specific to pharmacology, having conducted postdoctoral research in Molecular Pharmacology and Chemistry at the Sloan-Kettering Institute for Cancer Research. (Doc. No. 376 at 5.) Moreover, the court is aware of multiple cases in which Dr. Dudley has been permitted to provide expert testimony as to the pharmacological effects of substances such as XLR11. *See, e.g.*, *United States v. Zeidan*, No. 8:15-cr-410-JDW-TBM (M.D. Fla. July 15, 2016) (Doc. No. 66) ("I would offer the . . . opinion that XLR-11 and THC are not substantially similar in their pharmacological effects."); *United States v. Hossain*, No. 2:15-cr-14034-DMM-1 (S.D. Fla. Dec. 11, 2015) (Doc. No. 229) (permitting Dr. Dudley to testify on the pharmacological effects of XLR11 over the government's objection that "Dr. Dudley is not a pharmacologist. He is a chemist."). Based upon this, as well as a review of the analysis prepared by Dr. Dudley regarding JWH-018, UR-144, and XLR11 (*See* Doc. No. 376), the court is satisfied that Dr. Dudley is qualified to competently provide expert testimony as to the pharmacological effects of XLR11.

**I.     Defendant's Motion for Reconsideration**

Finally, the court addresses defendant's motion for reconsideration (Doc. No. 450) of the assigned magistrate judge's rulings on his discovery motions. Under Federal Rule of Criminal

---

[11] The court has already granted this motion in part, and has required that discovery relating to expert witness under Rule 16(b)(1)(C) be produced at least 45 days in advance of trial. (Doc. No. 456.)

15

Procedure 16(a)(1)(E), the government must provide a criminal defendant with discovery of materials "which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense." As the Ninth Circuit has stated:

> Rule 16 permits discovery that is relevant to the development of a possible defense. *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984). Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense. *See Little*, 753 F.2d at 1445; *Cadet*, 727 F.2d at 1466-68.

*United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990); *see also United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013); *United States v. Zone*, 403 F.3d 1101, 1107 (9th Cir. 2005).

With respect to the defendants' burden of making a prima facie showing of materiality in support of the request for discovery under Rule 16, it has been observed:

> The materiality requirement, however, is not a "heavy burden"; rather, evidence "is material as long as there is a strong indication that . . . the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471 (E.D. Cal. 1994). "[R]equests which are designed to generally cast for impeachment material . . . are not material. Such requests are instead simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful." *Id.* at 472.

*United States v. Bergonzi*, 216 F.R.D. 487, 501 (N.D. Cal. 2003); *see also Strickler v. Greene*, 527 U.S. 263, 280 (1999). Where the government shows that complying with a criminal defendant's discovery request under Rule 16 would be unduly burdensome, "it is incumbent on the district court to consider the government interests asserted in light of the materiality shown." *Mandel*, 914 F.2d at 1219 (citing *Cadet*, 727 F.2d at 1468). In the absence of the required factual showing of materiality by the defense, there is no basis to order discovery. (*Id.*); see also United States v. Santiago, 46 F.3d 885, 894-95 (9th Cir. 1995).

/////

Under *Brady v. Maryland*, 373 U.S. 83, 86 (1963), the prosecution has an obligation to reveal exculpatory evidence, whether substantive or for impeachment purposes, when such evidence is "material" to the defense and in the possession of the government. Again, evidence is "material" to the defense if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 474 U.S. 667, 681 (1985). While *Brady* is to be interpreted broadly to encourage prosecutors to carry out their duty, the rule has its limitations and does not require the prosecution to divulge every possible shred of evidence that could conceivably be of some use to the defendant. *See, e.g.*, *Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."); *Ferrara v. United States*, 456 F.3d 278, 291 (1st Cir. 2006); *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 823-24 (10th Cir. 1995).

In short, a defendant's mere allegation that the requested information might be material does not entitle the defense to an unlimited search of the government's files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Against these standards, the court will address each of the issues presented by the pending motion.

Here, defendant seeks reconsideration of the magistrate judge's discovery orders. Under the Local Rules of the Eastern District of California, a district judge reviewing a magistrate judge's pretrial order in both the civil and criminal contexts reviews such orders under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A). *See* L.R. 303(f); *accord United States v. Hunt*, No. 2:11-cr-441-KJM, 2013 WL 5279075, at *1 (E.D. Cal. Sept. 18, 2013). "Discovery motions are non-dispositive pretrial motions within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), and thus subject to the 'clearly erroneous or contrary to law' standard of review." *Al-Kidd v. Gonzales*, No. CV:05-093-S-EJL-MHW, 2008 WL 2788418, at *2 (D. Idaho July 17, 2008) (quoting *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK JFM, 2008 WL 2468492, at *1 (E.D. Cal. June 17, 2008)); *see also Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1167–68 (C.D. Cal. 1998) ("Under 28 U.S.C. § 636(b)(1)(A), a district court may reconsider a magistrate judges determination of

non-dispositive, pretrial matters if the magistrate's order is 'clearly erroneous or contrary to law.'"), *aff'd*, 216 F.3d 1082 (9th Cir. 2000). "To conclude that a magistrate judge's decision is clearly erroneous, the district court must arrive at a definite and firm conviction that a mistake has been committed." *Al-Kidd*, 2008 WL 2788418, at *1 (quoting *Folb*, 16 F. Supp. 2d at 1168). "[T]he magistrate judge's decision in such nondispositive matters is entitled to great deference by the district court." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).

Here, the undersigned concludes that defendant has not met his burden of demonstrating that the assigned magistrate judge's rulings on his discovery motions were clearly erroneous. The email referenced by defendant in his motion does not indicate that Liqun Wong (or anyone else within DRE) was aware of Dr. Berrier's dissenting opinion regarding UR-144. (Doc. No. 398-2 at 12.) Nor does any of Dr. Boos's testimony at the evidentiary hearing before the magistrate judge indicate that there are formal policies or procedures for determining when the Office of Forensic Sciences is consulted in determining whether a substance may qualify as substantially similar under the Analogue Act. To the contrary, Dr. Boos testified that the Office of Forensic Sciences is consulted "as needed," and that such consultation was considered "best practices" rather than a formal requirement. (Doc. No. 433 at 21:13–25.) Accordingly, defendant's motion for reconsideration with respect to his discovery motions will be denied.[12]

## CONCLUSION

For all of the reasons set forth above,

1. The government's motion to exclude testimony of potential defense expert Dr. Berrier (Doc. No. 323) is denied:

/////

---

[12] The court notes that with respect to several of defendant's discovery requests, the government has indicated that it has already turned over responsive materials. For instance, defendant has requested "determinations by DEA's ODE that XLR11 . . . had a chemical structure that is substantially similar to a controlled substance." (Doc. No. 335 at 11.) The government stated to the assigned magistrate judge that it has provided all XLR11 monographs. (Doc. No. 433 at 70:10–14.) The court understands, however, that these monographs are living documents that may change over time, and that under the magistrate judge's discovery orders the government is therefore under a continuing obligation to make further disclosures in the event that updated versions of these monographs are issued prior to the conclusion of the trial of this action.

18

2. The government's motion to preclude certain defenses and arguments (Doc. No. 324) is denied;

3. The government's motion to exclude non-self-inculpatory hearsay statements of defendant (Doc. No. 326) is granted;

4. Defendant's motion to dismiss certain counts of the Second Superseding Indictment (Doc. No. 364) is denied;

5. Defendant's motion to strike as surplussage or to dismiss reference to XLR11 as an analogue and to enjoin XLR11 prosecution as an analogue (Doc. No. 367) is denied;

6. Defendant's motion to dismiss charges under the Analogue Act as void for vagueness (Doc. No. 372) is denied as premature;

7. Defendant's motion to exclude and motion for a pretrial *Daubert* hearing (Doc. No. 373) is denied;

8. The government's motion for discovery and motion to exclude testimony of Dr. Dudley (Doc. No. 391) is denied, except to the extent it has already been granted by prior order of this court; and

9. Defendant's motion for reconsideration (Doc. No. 450) is denied.

IT IS SO ORDERED.

Dated: **May 16, 2018**

UNITED STATES DISTRICT JUDGE