UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:14-cr-00101-DAD-BAM-1 |
|---|---|
| Plaintiff, | |
| v. | ORDER ON REMAINING MOTIONS *IN LIMINE* |
| DOUGLAS JASON WAY, | (Doc. Nos. 486, 491, 493, 517) |
| Defendant. | |

This matter is before the court on defendant's motion to compel (Doc. No. 486), the government's motion *in limine* to admit defendant's self-inculpatory statements at trial (Doc. No. 493), and the government's request to seal (Doc. No. 517.) These matters, along with many other motions and requests, came before the court for hearing on June 12, 2018. On June 14, 2018, the government filed supplemental briefing in support of its motions in limine. (Doc. No. 542.) On June 18, 2018, defendant filed an opposition to that supplemental brief. (Doc. No. 545.) The court now issues this order resolving those matters not already ruled upon at the June 12, 2018 hearing.

**I.     Motion to Compel Testimony of DEA Special Agent Claude Cosey**

Defendant moved to compel the production at trial of four individuals: Dr. Arthur Berrier, DEA employees Jeffery Comparin and David Rees, and DEA Special Agent Claude Cosey. (Doc. No. 486.) The court resolved this motion as to the first three witnesses at the hearing and

1

now addresses whether Agent Cosey should be produced as a witness at trial.

Defendant Way seeks to compel Cosey's testimony in attempting to demonstrate defendant's good faith attempt to comply with the law, thereby undermining the government's contention that defendant possessed the requisite state of mind to violate the Analogue Act. According to defendant Way, DEA Agent Cosey met with Burton Ritchie, defendant's business associate at Zencense/ZenBio. (Doc. No. 486 at 5.) Based on their meeting, Ritchie was left with the impression that his products could legally be sold, and Ritchie passed this information on to defendant. (*Id.*) Defendant contends that this is at least some evidence tending to show that he lacked the requisite *mens rea*. The government opposes defendant's motion to compel the production of this witness, contending that Cosey's proposed testimony is irrelevant to any defense of entrapment by estoppel.

At the June 12, 2018 hearing on the parties' various motions in limine, counsel explained that the defense does not intend to assert an entrapment by estoppel defense. Instead, the defense contends that Agent Cosey's testimony is relevant as to the defendant's state of mind. The court agrees that Cosey's proposed testimony would not support to an entrapment by estoppel defense, since such a defense applies only where an authorized government official "affirmatively told [defendant] the proscribed conduct was permissible." *United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004) (quoting *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109 (9th Cir. 2000)). It appears undisputed that Agent Cosey never communicated directly with defendant Way, making an entrapment by estoppel defense based upon Cosey's proposed testimony unavailable to Way.

Instead, defendant argues that Cosey's testimony is admissible as bearing on defendant's state of mind. It appears likely that at trial the government will attempt to prove defendant's culpable state of mind by presenting evidence that he "knew the drug in question was unlawful under the Analogue Act or the [Controlled Substances Act.]" *United States v. Makkar*, 810 F.3d 1139, 1146 (10th Cir. 2015) (citing *McFadden v. United States*, ___U.S.___, ___, 135 S. Ct. 2298, 2305 (2015)). In that event, defendant contends that it would be erroneous to prohibit him from introducing evidence—such as Agent Cosey's testimony—tending to negate his knowledge

2

as to the lawfulness of XLR11.  The government responds that allowing the admission of such evidence to establish defendant Way's state of mind "would swallow the advice of counsel and entrapment by estoppel defenses and eviscerate the long-standing notion that ignorance of the law is no defense to a crime."  (Doc. No. 542 at 3.)

In addressing this issue, the parties direct the court to various out-of-circuit authorities in support of their positions.  The government relies chiefly on the decision in *United States v. Giffen*, 473 F.3d 30, 43 (2d Cir. 2006), while defendant cites to the decision in *United States v. Scully*, 877 F.3d 464, 470 (2d Cir. 2017).

In *Giffen* the Second Circuit considered whether, in the absence of evidence sufficient to entitle the defendant to an entrapment by estoppel jury instruction, whether that same evidence could be admitted for an alternative purpose.  Specifically, the Second Circuit addressed whether such evidence could be admitted under the umbrella of "negation of intent."  *Giffen*, 473 F.3d at 43.  The court expressed concern that negation of intent through a defense "that he honestly, albeit mistakenly, believed he was committing the charged crimes in cooperation with the government"—would "swallow the actual public authority and entrapment-by-estoppel defenses." *Id.*  The Second Circuit concluded that the defendant had no right to present such a defense.  Nonetheless, the court's discussion of entrapment by estoppel in that case was *dicta*, as acknowledged by the court itself.  *Giffen*, 473 F.3d at 44 ("[W]e emphasize that as we do not have jurisdiction to hear this interlocutory appeal, these observations are dicta and do not bind the district court.").  In any event, the undersigned concludes that the logic of the court *Giffen* is actually fatal to the position taken by the government in this case.  Immediately after rejecting application of the "negation of intent" defense in that case, the court in *Giffen* recognized that "at least in some circumstances, a defendant may offer evidence that he lacked the intent essential to the offense charged because of his good-faith belief that he was acting on behalf of the government."  *Id.* at 43.  Whether a defendant may do so depends "on the nature of the intent element of the charged crime, and whether a defendant's belief that his actions were authorized by the government would negate that intent."  *Id.* at 43–44.  Accepting *Giffen*'s reasoning, whether a defendant in a particular case may offer evidence as to his belief that his actions were

3

authorized, hinges on the knowledge requirement that the government must prove as to the charged offense. Specifically, a defendant would be able to offer such evidence if he was charged with a crime in which "proof that a defendant knew they were violating the law is required to establish the mens rea." *United States v. Georgescu*, 699 Fed. App'x 73, 75 (2d Cir. 2017) (interpreting *Giffen*).[1]

As the government points out, the "traditional rule" in American jurisprudence is that "ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 195 (1998). After the Supreme Court's decision in *McFadden*, however, that maxim may no longer apply to Analogue Act prosecutions, depending on the prong upon which the prosecution relies in seeking a conviction under that provision. In this regard, and as the language quoted above from the Tenth Circuit's decision in *Makkar* makes clear, depending on how the government seeks to prove its case-in-chief, the prosecution may be required to demonstrate beyond a reasonable doubt that defendant knew that his conduct was unlawful. Adopting the reasoning in *Giffen*, the undersigned finds that Agent Cosey's testimony is admissible at defendant Way's trial in order to allow the defense to present contrary evidence as to his state of mind.[2]

For the same reasons, defendant's presentation of testimony from Burton Ritchie at trial is also appropriate. Agent Cosey's purported statements regarding the legality of the products at issue in this case were made to Ritchie, who purportedly passed along the gist of those statements to defendant Way. Those statements are relevant as bearing on defendant's state of mind, and for that reason they do not constitute hearsay. *See Scully*, 877 F.3d at 474 (noting that the advice provided by defendant's counsel "was not hearsay because it went to Scully's state of mind and was not offered for the truth of the matter asserted").

Accordingly, defendant's motion to compel the attendance at trial of DEA Special Agent Claude Cosey will be granted.

---

[1] Citation to this unpublished Second Circuit case is appropriate pursuant to Federal Rule of Appellate Procedure 32.1.

[2] Because the court grants defendant's motion to compel the in-person testimony of Agent Cosey, his motion in the alternative to admit Cosey's deposition testimony into evidence (Doc. No. 491) is denied as moot.

4

1 | **II.     Motion to Admit Defendant's Self-Inculpatory Statements**

Next, the court addresses the government's motion to admit defendant's self-inculpatory statements. (Doc. No. 493.) The government seeks to admit, in redacted form, a transcript of a statement under oath in which defendant was voluntarily questioned by prosecutors in the presence of his defense counsel with the understanding that his statements could be used against him. (*See* Doc. No. 493-2 at 39.) Defendant opposes the government's motion as to nine specific exchanges, requesting either that the transcript be unredacted or, alternatively, that the prosecutor's question and defendant Way's answer not be presented to the jury at all. (Doc. No. 514 at 3.)

As this court discussed in a prior order, a defendant's self-inculpatory statements, "when offered by the government, are admissions by a party-opponent and are therefore not hearsay." *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (citing Fed. R. Evid. 801(d)(2)). By contrast, "non-self-inculpatory statements are inadmissible hearsay." *Id.* (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)). Federal Rule of Evidence 106, the so-called "rule of completeness," does not alter this conclusion: "Rule 106 'does not compel admission of otherwise inadmissible hearsay evidence.'" *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (quoting *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2nd Cir. 1995)), *as amended* (Oct. 21, 1996); *see also United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). Accordingly, the court rejects defendant's attempt to have any additional aspects of his prior statement admitted at trial.

That said, the court may review the government's proffered statements made by the defendant to determine whether those statements, in their redacted form, are either "misleading [or] taken out of context." *See United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (citing *Collicott*, 92 F.3d at 982–83); *see also United States v. Quinones-Chavez*, 641 Fed. App'x 722, 725 (9th Cir. 2016)[3] (noting in this context that "Due Process forbids the government from knowingly introducing false evidence") (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959));

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

5

*Vallejos*, 742 F.3d at 905. The court will therefore examine each of the challenged passages of defendant's prior statement to determine whether, as redacted by the government, they would tend to mislead the jury as to defendant's actual statement or otherwise create a misimpression by taking the defendant's statement out of context.

**A.	Page 12**

Defendant first takes issue with a redaction on page twelve of the transcript. (Doc. No. 493-1 at 9; Doc. No. 493-2 at 9.) In the government's proposed version, defendant indicates that he was contacted by Tony Nottoli, who informed defendant that he was considering buying Ritchie's business and requested that defendant perform consulting work for him. (Doc. No. 493-1 at 9.) In the unredacted version, defendant goes on to indicate that he initially rejected Nottoli's offer, but subsequently made a counter-offer to Nottoli, which was also rejected. (Doc. No. 493-2 at 10.) Defendant then made a second offer to Nottoli, which was ultimately accepted. (*Id.* at 10–11.)

The court finds the version proposed by the government to be neither misleading nor taken out of context. According to both the redacted and unredacted versions of defendant's statement, Nottoli contacted defendant attempting to secure defendant's consulting services. Defendant ultimately agreed to perform those services. The redacted portions of defendant's statement discuss only the negotiations that occurred between defendant and Nottoli regarding the price to be paid for defendant's services, and specifically how Nottoli rejected defendant's initial proposal as too expensive. The court fails to see how those negotiations would aid in the jury's understanding of any relevant issue or how the redaction would in any way mislead the jury. Accordingly, the court finds that this statement, as redacted by the government, is admissible.

**B.  Page 16**

Defendant next objects to the redactions on page sixteen, lines 19–24 of the transcript. (Doc. No. 493-1 at 11; Doc. No. 493-2 at 11.) In the passage the government seeks to introduce at trial, defendant describes his job duties under the consulting agreement. He broke these duties into three parts. First, defendant stated that he was charged with "mak[ing] sure that the terms of the revised agreement were fulfilled, and those terms specifically had to do with financial - - a

6

financial component and a compliance component." (Doc. No. 493-1 at 11.) Second, defendant stated he was charged with "get[ting] a management team in place for Tony [Nottoli] in California." (*Id.*) Third, defendant described his role "was just basically to play mediator between [Ritchie and Nottoli] because they were both at each other and hyperstressed and their communication was essentially nonexistent." (*Id.*) Meanwhile, in the redacted portion of the defendant's statement, defendant elaborated on this third point, merely explaining that mediating between Ritchie and Nottoli "actually turned out to be the biggest component of the job, was just basically refereeing conversations between the two of them because they essentially refused to speak to each other directly." (Doc. No. 493-2 at 11.)

Here, the court again finds that the government's proposed redacted statement is neither misleading nor out of context when compared to the unredacted version. True, the portions redacted by the government do provide more substance to defendant's statement. However, the redactions by the government do not fundamentally alter the statement's meaning, nor can the court conclude that the redacted statement is in any way misleading. Accordingly, this statement by defendant is also admissible as redacted by the government.

**C. Page 25**

Defendant next objects to the redactions on page 25, where he was asked whether he was familiar with the term "spice." (Doc. No. 493-1 at 17; 493-2 at 17.) In the government's proposed version of that statement, defendant responded that he was familiar with the term, and that he understood it to be a product called K2, which was sold in 2010. (Doc. No. 493-1 at 17.) A portion of defendant's statement is then redacted in the government's proposed version, after which defendant is asked whether, "as of November 2012, is it fair to say you understood Spice to be a term for smokeable chemicals?" (*Id.* at 17–18.) Defendant responded in the affirmative, and stated that spice "wasn't the first smokeable kind of smoker's blend things that had come along that weren't tobacco in the industry. It was one in a series over the last 20 years." (*Id.* at 18.) In the unredacted version of his statement, defendant elaborated on his understanding of the term "spice," stating that spice products were:

/////

> smokeable blends of some mix of chemicals, and they got big in our industry, and then they - - at least, as far as I understood, it went down very hard in a nasty legal situation. So it kind of came and went. It was a big boom in the counterculture business, and then it went away very quickly as well.

(Doc. No. 493-2 at 17.)

The court does not find the redacted version of defendant's statement in this regard to be misleading or taken out of context. Indeed, the portions of defendant's statement redacted by the government appear to be entirely irrelevant—defendant's discussion as to the legal consequences for spice in the past bear no relation to whether he knew what spice was. This redaction does not render the government's redacted version of defendant's statement misleading and will be admitted in the form proposed.

### D. Page 39

Next, defendant objects to the government's redaction found on page 39 of the transcript of his statement under oath. (Doc. No. 493-1 at 26; 493-2 at 26.) There, defendant Way was asked whether products he was involved with listed their ingredients; defendant replied that he didn't think so. (*Id.*) Defendant was then asked whether, given his knowledge of FDA regulations, that failure to label the products was appropriate; defendant replied that it was not appropriate. (*Id.*) That is the extent of the passage in the redacted version, however in the unredacted version, defendant goes on to explain that he was "taking Burton [Ritchie] at his word that he doesn't want someone to burn and inhale this or eat it or huff it or do any of the interesting things that people do to alter their consciousness." (Doc. No. 493-2 at 26.) He further stated that if people were to do so, that would be "a dangerous, dangerous situation, and Tim [Ortiz] wasn't comfortable with it, and neither was I." (*Id.* at 26–27.)

Again, here, the court finds that the redacted statement the government seeks to admit is neither misleading nor out of context as compared to the unredacted statement. The defendant was asked about the propriety of not labeling substances, and defendant responded that in his view, this practice was inappropriate. Defendant then in some fashion attempted to explain his actions, but that vague explanation does not render his first statement misleading. The government's proposed statement accurately conveys defendant's belief that the products were

not properly labeled and that they should have been.  That statement is neither misleading nor out of context, and it may be properly introduced at trial in the form proposed by the government.

**E.     Page 45**

Defendant next objects to the redactions on page 45 of the transcript of his statement under oath. (Doc. No. 493-1 at 32; Doc. No. 493-2 at 32.)  In the government's redacted version, defendant was asked when he started receiving payments, and defendant responded that he began receiving them "at the beginning of November." (Doc. No. 493-1 at 32.)  In the unredacted version, defendant appears to have corrected himself and stated that he also received a check from Burton Ritchie prior to November. (Doc. No. 493-2 at 32.)

Although the court is uncertain how that redacted statement is in any way helpful to defendant, the court finds that its inclusion would more accurately capture the entirety of defendant's actual statement in response to the question posed to him.  The fact that defendant immediately corrected himself and stated that he received a payment from Ritchie prior to November renders the government's redacted statement incomplete and at least arguably misleading.  Accordingly, and out of an abundance of caution, the government's motion to present lines 10–12 on page 45 of the transcript (Doc. No. 493-2 at 32) is denied.  The statement, however, may be admitted if it includes the remainder of defendant's answer as discussed immediately above.

**F. Page 51**

Defendant next objects to the redactions on pages 50 and 51. (Doc. No. 493-1 at 36; 493-2 at 36.)  In the government's proposed redacted version, defendant stated that he was aware of ZenBio's policy that if a ZenBio product was seized prior to reaching its destination, the customer would be reimbursed. (Doc. No. 493-1 at 35.)  Defendant then stated that he was aware that some shipments were being seized, although he stated that he did not "know specifically who was seizing the product, whether it was security at the shipping hubs or whether it was a law enforcement agency." (*Id.*)  However, defendant next responded that as to a particular shipment from Crystal Henry to Natalie Middleton, he "doesn't dispute" that he knew it was seized by the Fresno County Sheriff's Department. (*Id.* at 35–36.)  Defendant contends that this passage is

misleading, because immediately following this statement, defendant added that he "honestly didn't kind of parse that out." (Doc. No. 493-2 at 36.)

The court does not find that the government's proposed redacted statement is misleading. In his statement under oath, defendant said he did not keep track of whether security or law enforcement seized ZenBio products, but that he was aware that law enforcement seized the one particular shipment. His subsequent statement that he "didn't kind of parse that out" adds nothing to his answer. Because the addition sought by defendant would not alter the meaning of the defendant's statement as proposed by the government, the court finds that the redacted version is not misleading, and will grant the government's request to admit it.

### G. Page 88

Defendant next objects to the government's proposed statement found on page 88 of the transcript of his statement under oath. (Doc. No. 493-1 at 58; Doc. No. 493-2 at 58.) In the government's proposed redacted version, defendant was asked whether Mr. Nottoli's business sales were good in January 2013, to which he responded that they were. (Doc. No. 493-1 at 58.) He was then asked whether he was to be paid one percent of those gross sales. (*Id.*) He responded in the affirmative, before immediately correcting himself to say that he was going to receive two percent of sales, rather than one percent. (*Id.*) In the unredacted version, defendant went on to clarify that the prosecutor questioning him was looking at the proposed agreement defendant had rejected, and that under the actual agreement he entered into, it was agreed that defendant would receive two percent of gross sales. (Doc. No. 493-2 at 58.)

The government's proposed statement is in no way misleading. Defendant was asked how he was to be paid by Nottoli, and the redacted statement accurately conveys that he was to receive two percent of Nottoli's gross sales. The reason for any confusion—that the prosecutor asking the questions was referencing the wrong version of the agreement—is irrelevant, and adds no further context that would enlighten the jury. Accordingly, the government may introduce the statement in its proposed, redacted form.

/////

/////

**H.     Page 101**

Next, defendant objects to redactions at page 101 of the transcript. In the government's proposed version, defendant was asked whether he thought the product he was involved with was potpourri. (Doc. No. 493-1 at 64; Doc. No. 493-2 at 65.) Defendant replied that he did not and, rather, that he "assumed it was meant to be burned." (*Id.*) That is the extent of the exchange in the government's proposed version. However, in the unredacted version, there was an exchange between the questioning prosecutor and defendant Way in which the word "incense" was used, with defendant perhaps implying by his answers that he believed the products being sold were incense. (Doc. No. 493-2 at 65.)

From this prior exchange, it appears clear that when defendant said that he thought the product was "meant to be burned," he is referring to his belief that the product was incense. However, when stripped of this prior context, there is no reference to incense. It is at least plausible that, absent this context, a factfinder could read the redacted statement and interpret it as an admission that defendant assumed the substance was intended for human consumption, and specifically that it was intended to be smoked. The government's proposed redacted version of defendant's statement under oath in this regard therefore has the potential to mislead a factfinder. Accordingly, the government's motion to admit evidence is denied without prejudice to the offering of the exchange with the reference to incense included.

**I.  Page 105**

Finally, defendant objects to redactions at page 105 of the transcript of his statement under oath. (Doc. No. 493-1 at 65–66; Doc. No. 493-2 at 66–67.) In the government's proposed redacted version, defendant was asked what consumer warnings the products sold by Nottoli and Ritchie should have contained. (Doc. No. 493-1 at 65.) Defendant responded that the product "should have had a flammability warning, a poison warning, and it should have had extremely explicit company information." (*Id.*) Defendant went into further detail with respect to the poison warning, stating that it should have warned people not to ingest the product, and to "go to a poison control center" if it was ingested. (*Id.*) With respect to the company information that should have been on the product, defendant stated that "in [his] world, in the world of dealing

with the FDA, we are legally required to put the company's physical address, website, and phone number" on the product. (*Id.* at 66.) Finally, defendant was asked whether he was familiar with FDA regulations, to which he responded "Oh, yeah, absolutely." (*Id.*) In the unredacted version, the exchange between the prosecutor and the defendant continued and defendant Way was asked whether he knew that products labeled for human consumption had to be labeled a certain way, and defendant responded that "if it's intended for consumption, there is an even higher standing [of labeling guidelines.]" (Doc. No. 493-2 at 67.)

The court does not find that this additional passage which defendant wants included alters the context of the version proposed by the government. True, defendant does go into greater detail about his understanding of FDA regulations in the redacted passage. However, inclusion of that additional passage would not alter the meaning of the portion the defendant's statement the government seeks to admit. The government's motion to admit this passage is therefore granted.

### III. Government's *Ex Parte* Request for an *In Camera* Ruling Regarding Possible *Giglio* Material

Next, the court addresses the government's request to seal. (Doc. No. 517.) Although the government's request to seal is opaque on its face as to the subject matter of the request, *ex parte* submissions to the court reveal that the government seeks a ruling on whether certain materials relating to potential government witnesses constitute *Giglio* material, obtained in part in response to the government's inquiry pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), must be disclosed to the defense.

"There are three elements of a *Brady/Giglio* violation: '(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.'" *United States v. Kohring*, 637 F.3d 895, 901 (9th Cir. 2011) (quoting *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008)). "Evidence is prejudicial or material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 902 (footnote omitted) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Although constrained to some extent by the *in camera* nature of the government's submission, the court is nonetheless satisfied that this material, even if disclosed to the defense, is unlikely to alter the course of the trial. Indeed, the material reviewed by the court could not properly be used for impeachment. Accordingly, the court holds that as to the material submitted by the government *in camera* and *ex parte*, that material need not be disclosed to the defense.

**IV.  Advice of Counsel**

Finally, the court addresses whether defendant may introduce evidence at trial based on advice received from an attorney. The court previously directed defendant to provide a pre-trial offer of proof as to the elements of advice of counsel defense. (Doc. No. 504.) In response, defendant provided the court with several documents *ex parte*, although the court understands that those documents have now been made available to the government. (*See* Doc. No. 542 at 1–2.) The government argues that the proffered evidence is insufficient as a matter of law to establish an advice-of-counsel defense, and that defendant is therefore not entitled to a jury instruction on that subject. (*See generally id.*)

"Advice of counsel is not a defense per se to a criminal case, rather, it is circumstantial evidence of good faith intent to comply with the law." *United States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1110 (E.D. Cal. 2008), *aff'd sub nom. United States v. Montes*, 421 Fed. App'x 670 (9th Cir. 2011). To be entitled to a jury instruction with respect to an advice of counsel defense, the defendant must show "that he made a full disclosure of all material facts to *his attorney* and that he then relied 'in good faith on the specific course of conduct recommended by the attorney.'" *United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010) (emphasis added) (quoting *United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987)).

Defendant directs the court's attention to letters written by Florida attorney Tim Dandar. In one letter, Dandar conducted an analysis of the legality of XLR11 as of January 9, 2013, both at the federal level and across all fifty states. That letter concludes that under federal law, XLR11 is legal. Defendant apparently received this letter, sent it to a ZenBio employee, and directed that employee to place it in a "compliance" file.

/////

Despite defense counsel's filing of an opposition to the government's supplemental briefing, the court still does not have sufficiently specific information before it to conclude that defendant Way is entitled to present an advice of counsel defense or to a jury instruction with respect to such a defense. Indeed, it is not entirely clear from the defendant's most recently filed opposition whether the defendant even intends to present an advice of counsel defense or rather merely intends to defend against the charges against him on the grounds that he lacked the requisite state of mind. In this regard, the letter from attorney Dandar indicates that defendant Way was aware that an attorney for the company had opined during the period charged in the indictment, that XLR11 was not illegal under federal law. Accordingly, for the reasons set forth above the court concludes that evidence regarding this letter and defendant's awareness of its content are admissible on the question of whether defendant acted with a culpable state of mind. Whether defendant is entitled to an advice of counsel jury instruction will be resolved at the appropriate time during the course of the trial.[4]

For the reasons explained above:

1. Defendant's motion to compel (Doc. No. 486) is granted as to DEA Special Agent Claude Cosey;
2. Defendant's motion *in limine* seeking to admit the deposition of Special Agent Claude Cosey (Doc. No. 491) is denied as moot;
3. The government's motion *in limine* seeking to admit self-inculpatory statements made by defendant (Doc. No. 493) is granted in part; and

/////

/////

/////

/////

---

[4] The parties still have not briefed the issue of whether defendant may assert an advice of counsel defense based upon advice he received from corporate counsel. *See United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 560 (S.D.N.Y. 2015) (assuming that in the absence of a valid privilege, the individual defendant could have asserted a complete advice of counsel defense based on advice received from corporate counsel); *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006).

14

4. The court finds that the material submitted *in camera* pursuant to the government's notice of request to seal (Doc. No. 517) need not be disclosed to the defense at this time.

IT IS SO ORDERED.

Dated: **June 18, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE