UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:14-cr-00101-DAD-BAM |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE UNDER 28 U.S.C. § 2255 |
| DOUGLAS JASON WAY, | |
| Defendant. | (Doc. Nos. 790, 805) |

Defendant Douglas Jason Way ("Movant") is a federal prisoner proceeding with counsel with a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 790.) Having considered the parties' briefing, and for the reasons explained below, his motion for relief pursuant to § 2255 will be denied.

**BACKGROUND**

On April 16, 2016, a second superseding indictment was returned by a grand jury of this district charging movant Way with: (1) conspiracy to manufacture, distribute, and/or possess with intent to distribute a controlled substance analogue in violation of 21 U.S.C. § 841(a)(1); (2) manufacturing a controlled substance analogue in violation of § 841(a)(1); (3) distribution of a controlled substance analogue in violation of § 841(a)(1); (4) attempted possession with intent to distribute for human consumption a controlled substance analogue in violation of § 841(a)(1);

(5) conspiracy to possess a listed chemical with reasonable cause to believe that it would be used to manufacture a controlled substance analogue in violation of § 841(c)(2); (6) conspiracy to defraud and/or to commit offenses against the United States in violation of 18 U.S.C. § 371; and (7) introduction into interstate commerce of misbranded drugs in violation of 21 U.S.C. § 331(a). (Doc. No. 196.)  As characterized in his pending motion, the charges brought against Movant stemmed from his conduct as the executive leader of ZenBio, LLC ("ZenBio"), previously known as Zencense, a "spice" manufacturing and distribution business between approximately September 2012 and February 2013.  (Doc. No. 797 at 6.)  The second superseding indictment alleged that Movant and other defendants manufactured and distributed substances containing AM-2201[1] and XLR11[2].  (Doc. No. 23 at 2–4.)

The jury trial in Movant's case commenced on June 19, 2018.  (Doc. No. 549.)  On July 12, 2018, the jury heard the closing arguments of counsel, was instructed by the court on the law, and commenced their deliberations.  (Doc. No. 651.)  On July 13, 2018, the jury returned its verdict, finding Movant guilty of all charges brought against him.  (Doc. No. 655, 657; *see also United States v. Way*, 804 F. App'x 504, 507–08 (9th Cir. 2020)[3].)  The first five counts of conviction were for violations under the Controlled Substances Act ("CSA").  In this regard, the Controlled Substances Analogue Enforcement Act "treats a controlled substance 'analogue'—one that is substantially similar to a controlled substance but not scheduled itself—as though it were a Schedule I controlled substance."  *Way*, 804 F. App'x at 508 (citing 21 U.S.C. §§ 802(32)(A), 813).  More specifically, that Act imposes the following two requirements for a substance to be a

---

[1]  The substance known as AM-2201 is 1-(5-fluoropentyl)-3-(1-naphthoyl)indole.  (Doc. No. 659 at 32.)

[2]  References to XLR11 and 5-F-UR-144 refer to the same substance.  (*See* Doc. Nos. 196 at 2 ("XLR11, also known as 5-F-UR-144, is a schedule I controlled substance as of May 16, 2013."); 659 at 32 ("[T]he court will refer to one of the substances at issue in this case as 5-F-UR-144. You are instructed that this substance is identical to XLR11.")).  The substance known as 5-F-UR-144 or XLR11 is 1-(5-fluoropentyl)-1H-indol-3-yl(2,2,3,3-tetramethylcyclopropyl) methanone, also known as 5-fluoro-UR-144.  (Doc. No. 659 at 32.)

[3]  Citation to this and other unpublished Ninth Circuit opinions in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  controlled substance analogue—it must be "substantially similar" in both:  1) chemical structure

2  and; 2) pharmacological effect to a Schedule I or II controlled substance.  21 U.S.C.

3  § 802(32)(A).

4       The prosecution's theory as to the CSA charges brought against Movant Way was that the

5  synthetic cannabinoid 5-F-UR-144 was an analogue of JWH-018, which was a scheduled

6  controlled substance under 21 C.F.R. § 1308.11(g)(3).  *See* Doc. No. 657; *see also Way*, 804 F.

7  App'x at 508.  The jury's verdict reflected its agreement with the prosecution's theory of the case.

8       On October 29, 2018, Movant was sentenced to an aggregate 132-month term of

9  imprisonment, well below the advisory sentencing guideline range of 360-months to life

10  imprisonment, with a 36-month term of supervised release to follow.  (Doc. Nos. 728, 735, 742.)

11  The undersigned granted Movant's request for bail pending appeal.  (Doc. No. 728, 736.)  On

12  February 21, 2020, Movant's judgment of conviction was affirmed on appeal by the Ninth Circuit

13  Court of Appeals in an unpublished memorandum opinion.  (Doc. No. 768.)  Thereafter, Movant

14  was ordered to voluntarily surrender to the designated Bureau of Prisons institution to begin

15  serving his sentence by September 2, 2020.  (Doc. No. 788.)  On October 5, 2020, the Supreme

16  Court denied certiorari.  *Way v. United States*, 141 S. Ct. 371 (2020).

17       On September 29, 2021, Movant filed a § 2255 motion  with this court, asserting that he

18  had received ineffective assistance from both his trial and appellate counsel.  (Doc. No. 790.)

19  Pursuant to stipulation of the parties (Doc. No. 792), Movant filed a supplemental § 2255 motion

20  on January 3, 2022, detailing his claims by asserting five instances of ineffective assistance of

21  counsel at trial and two instances of ineffective assistance of counsel on appeal.  (Doc. No. 797.)

22  Therein, Movant argued that his trial counsel provided him ineffective assistance by failing to:

23  (1) serve a trial subpoena upon a critical witness (*id*. at 7–9; 16–17); (2) adequately prepare a

24  defense expert witness (*id*. at 13, 17–18); (3) move to strike the conclusory trial testimony by

25  government experts (*id*. at 13, 18–19)[4]; (4) object to a jury instruction that constructively

26

27  [4]  The court notes that Movant switched the order of his second and third claims of ineffective
    assistance by trial counsel from their first presentation in the introduction section of his motion as
    compared to their presentation in the analysis section of his supplemental filing.  The court

28  follows the ordering of Movant's arguments as laid out in the latter.

1 amended the operative indictment (*id*. at 13, 19–22); and (5) object to the prosecutor's contention

2 during closing argument that the jury could use their common sense in determining the chemical

3 similarity of the compounds at issue (*id*. at 13, 21–22).  Movant also asserted that his appellate

4 counsel provided him ineffective assistance by failing to:  (1) raise on appeal that the jury

5 instructions given at his trial constructively amended the indictment; and (2) challenge on appeal

6 the exclusion of an attorney's opinion letter as relevant to the issue of Movant's compliance with

7 federal law.  (*Id*. at 25–27.)

8   On February 18, 2022, one of Movant's trial lawyers, attorney W. Scott Quinlan[5],

9 submitted a declaration in support of Movant's motion to vacate his conviction and request for an

10 evidentiary hearing.  (Doc. No. 798.)  On February 28, 2022, the government filed its opposition

11 to the pending motion as supplemented by Movant.  (Doc. No. 799.)  Movant filed a reply thereto

12 on April 29, 2022.  (Doc. No. 802.)[6]

13          **LEGAL STANDARD**

14 **A.**  **28 U.S.C. § 2255 Motions**

15   A federal prisoner collaterally attacking the validity of their conviction or sentence must

16 do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C.

17 § 2255, filed in the court which imposed the sentence.  *United States v. Monreal*, 301 F.3d 1127,

18 1130 (9th Cir. 2002); *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988).  Section 2255

19 provides four grounds upon which a sentencing court may grant relief to a federal prisoner:

20 (1) The sentence was imposed in violation of the Constitution or laws of the United States; (2) the

21 court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the

22

[5]  Attorney Quinlan also represented Movant Way on appeal.

23

24 [6]  Shortly after the filing of this reply, the undersigned was transferred to the Sacramento
courthouse of this district, and this case was reassigned to a district judge in the Fresno

25 courthouse.  (Doc. No. 803.)  Approximately sixteen months later, the case was reassigned to this
court's "NODJ" caseload while the court awaited the confirmation of a new district judge to fill

26 the then recently created vacancy in the Fresno courthouse.  (Doc. No. 804.)  Movant filed a
motion for reassignment of the case to a sitting district judge on December 7, 2023.  (Doc. No.

27 805.)  This case was ultimately reassigned back to the undersigned on April 15, 2024.  (Doc. No.
806.)  Accordingly, Movant's motion for reassignment of the case to a sitting district judge will

28 be denied as having been rendered moot by the April 15, 2024 reassignment order.

maximum authorized by law; or (4) it is otherwise subject to collateral attack.  28 U.S.C.

§ 2255(a); *see also Davis v. United States*, 417 U.S. 333, 344–45 (1974); *Monreal*, 301 F.3d at

1130; *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).  Both the grounds for relief

and the scope of the remedy in a § 2255 proceeding are identical to those available to state

prisoners under 28 U.S.C. § 2254, the federal habeas corpus statute.  *Davis*, 417 U.S. at 343-44.

To warrant the granting of relief on a § 2255 motion, the petitioner must demonstrate the

existence of an error of constitutional magnitude which had a substantial and injurious effect or

influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now

that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to

those under section 2254.").  Such relief is warranted only where a petitioner has shown "a

fundamental defect which inherently results in a complete miscarriage of justice."  *Davis*, 417

U.S. at 346; *see also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

A district court presented with a request for an evidentiary hearing on a § 2255 motion

must determine whether a factual basis exists in the record to support a movant's claims and, if

not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*, 187 F.3d 1075,

1078 (9th Cir. 1999).  "To warrant a hearing . . . the movant must make specific factual

allegations which, if true, would entitle him to relief."  *United States v. Moss*, No. 2:03-cr-00550-

WBS-DAD, 2015 WL 251890, at *5 (E.D. Cal. Jan. 20, 2015) (citing *United States v. Withers*,

638 F.3d 1055, 1062 (9th Cir. 2011)).  "[A] district court must grant a hearing to determine the

validity of a petition brought under [§ 2255], '[u]nless the motions and the files and records of the

case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Blaylock*, 20

F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255); *see also United States v. McMullen*,

98 F.3d 1155, 1159 (9th Cir. 1996).  In the context of a § 2255 motion presenting ineffective

assistance of counsel claims, if the "petitioner has not 'raised any factual disputes regarding

counsel's performance that require resolution in an evidentiary hearing, and that, if decided in his

favor, would entitle him to relief,'" then "an evidentiary hearing is not necessary or appropriate."

*Liggins v. McDonald*, No. 2:09-cv-01777-GEB-EFB, 2012 WL 2065049, at *8 (E.D. Cal. June 6,

1  2012) (quoting *West v. Ryan*, 608 F.3d 477, 489 (9th Cir. 2010)); *see also United States v.*

2  *Burrows*, 872 F.2d 915, 918 (9th Cir. 1989) (concluding that an evidentiary hearing need not be

3  held where "the record conclusively shows that [movant's] trial attorney was not ineffective.").

4  Finally, relief may be summarily denied without a hearing if the motion contains no more than

5  conclusory allegations. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also United*

6  *States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004); *United Sates v. Leonti*, 326 F.3d 1111, 1116

7  (9th Cir. 2003) (to be entitled to an evidentiary hearing the movant must provide specific factual

8  allegations which, if true, would state a claim upon which § 2255 relief could be granted).

9  **B.     Ineffective Assistance of Counsel Claims**

10          The clearly established federal law governing ineffective assistance of counsel claims

11  such as those presented in the pending motion is that set forth by the Supreme Court in *Strickland*

12  *v. Washington*, 466 U.S. 668 (1984).  To succeed on such a claim, a defendant must show that:

13  (1) his counsel's performance was deficient; and (2) the "deficient performance prejudiced the

14  defense." *Id*. at 687; *see also United States v. Juliano*, 12 F.4th 937, 940 (9th Cir. 2021).  "If

15  either prong is not met, [the Court] must dismiss the claim."  *United States v. Sanchez-Cervantes*,

16  282 F.3d 664, 672 (9th Cir. 2002); *see also Rios v. Rocha*, 299 F.3d 796, 806 (9th Cir. 2002)

17  ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.")

18  (citation omitted).  "[T]here is a 'strong presumption' that counsel's representation was within the

19  'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104

20  (2011) (quoting *Strickland*, 466 U.S. at 689.); *see also United States v. McGowan*, 668 F.3d 601,

21  605 (9th Cir. 2012).  A petitioner must rebut this presumption by demonstrating that his counsel's

22  performance was unreasonable under prevailing professional norms and was not the product of

23  sound trial strategy.  *Strickland*, 466 U.S. at 688–89.  Thus, "strategic choices made after

24  thorough investigation of [the relevant] law and facts relevant to plausible options are virtually

25  unchallengeable." *Id*. at 690.  In short, judicial scrutiny of counsel's performance is highly

26  deferential, and thus the court must evaluate counsel's conduct from counsel's perspective at the

27  time it occurred, without the benefit of hindsight. *Id*. at 689; *see also Richter*, 562 U.S. at 104

28  /////

1  ("Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose

2  result is reliable.'") (quoting *Strickland*, 466 U.S. at 687).

3      As noted above, even where counsel's performance is found to be deficient, in order to

4  prevail on such a claim a petitioner is required to show that his counsel's conduct prejudiced him.

5  *Strickland*, 466 U.S. at 691–92.  To establish prejudice, a petitioner must demonstrate that there is

6  "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

7  would have been different."  *Id*. at 694.  A reasonable probability is one "'sufficient to undermine

8  confidence in the outcome'" but is "less than the preponderance more-likely-than-not standard."

9  *Summerlin v. Schriro*, 427 F.3d 623, 640, 643 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at

10  693–94).  Nonetheless, "[t]he likelihood of a different result must be substantial, not just

11  conceivable."  *Richter*, 562 U.S. at 112.

## DISCUSSION

13      Here, Movant Way asserts that he is entitled to post-conviction relief due to the ineffective

14  assistance provided by his trial and appellate counsel.  (Doc. No. 797.)  The government contends

15  that his allegations do not support a claim for relief and that his motion should be denied without

16  an evidentiary hearing being held.  (Doc. No. 799 at 22.)  The court will address each of

17  Movant's ineffective assistance claims in turn, ultimately concluding that it is plain on the face of

18  the pending motion that Movant is not entitled to § 2255 relief.

19  **A.    Claims One and Seven**

20      In his Claim One, Movant argues that he received ineffective assistance when his trial

21  counsel failed to subpoena a witness, Timothy Dandar, to appear at Movant's trial.  (Doc. No. 797

22  at 15.)  Dandar was an attorney who apparently purported to provide legal opinions to clients as

23  to whether various chemical substances were controlled substances under state and federal law,

24  and was retained by ZenBio to provide such opinions.  (Doc. No. 798 at 1.)  Attorney Dandar did

25  /////

26  /////

27  /////

28  /////

1    not testify at Movant's trial.[7]  (Doc. No. 797 at 7.)  Movant contends that because his trial counsel

2    failed to secure attorney Dandar's appearance, the defense was unable to elicit testimony from

3    Dandar that he had conducted a review of the ZenBio business when he issued his legal opinion

4    that ZenBio's production and distribution of XLR11 did not violate federal law.  (*Id*. at 16.)

5    Movant's counsel was nonetheless able to introduce attorney Dandar's opinion letter into

6    evidence at trial, but according to Movant, the undersigned "excluded the great majority of the

7    opinion letter from evidence as lacking in foundation, including the opinion concerning the

8    federal legality of XLR11."  (*Id*. at 7.)[8]  Movant argues that his trial lawyers were ineffective for

9    not serving a trial subpoena on attorney Dandar to compel his appearance at trial, where he could

10   have explained to the jury the basis of his legal opinion.  (*Id*. at 8.)

11       In opposition, the government argues that Movant's trial counsel cannot be deemed

12   ineffective for failing to subpoena attorney Dandar because the record before the court establishes

13   that Movant has made no showing that his trial counsel had the ability to serve a trial subpoena on

14   Dandar.  (Doc. No. 799 at 15.)  The government notes that Movant's trial counsel was able to

15   contact Dandar only once by phone and that Dandar was completely uncooperative and refused

16

17   [7]  According to Movant, his trial counsel anticipated calling attorney Dandar as a defense witness,
     but after Dandar was contacted by a DEA agent, he refused to testify and later became

18   unreachable.  (Doc. No. 797 at 15.)  According to the government, Movant's counsel represented
     to the court at trial that Dandar "chose not to testify" and made no mention of him being

19   contacted by a DEA agent.  (Doc. No. 799 at 14; 799-2 at 41.)  The government has also attached
     a declaration to their opposition to the pending motion in which Assistant United States Attorney

20   Escobar states that the government's attorneys and case agents in this case never contacted
     Dandar, and the DEA has run an inter-office database search and found no record of an interview

21   of attorney Dandar by any agent assigned to any DEA office.  (Doc. No. 799 at 27–28.)

22   [8]  As will be discussed further below, this a mischaracterization of the court's redaction of
     attorney Dandar's letter as well as the unredacted portion that was admitted into evidence at trial

23   and available for the jury's consideration.  The court has reviewed both the unredacted copy of
     attorney Dandar's letter (Doc. No. 799-2 at 103–123) and the redacted copy which was received

24   into evidence (Doc. No. 799-3 at 3–5).  References to states and state agencies were indeed
     redacted, as were the pages of the letter containing discussion of the legal status of XLR11 across

25   each of the fifty states.  (Doc. No. 799-2 at 105–123.)  Additionally, warning language in the
     letter that "this correspondence does not take into account any relevant county or municipality

26   ordinances" was redacted.  (Doc. No. 799-2 at 103.)  However, the entire section of the opinion

27   letter regarding "U.S. Congress" or "federal" legality remained unredacted from the letter as it
     was admitted into evidence.  (Doc. Nos. 799-2 at 104–05; 799-3 at 4–5.)

28

not only to testify on behalf of Movant but also to provide Movant's counsel with an address where he could be reached. (*Id*.; Doc. No 798 at 2 (trial counsel declaring that during that phone conversation Dandar told him "in no uncertain terms that he would not testify on behalf of Mr. Way").) As a result of Dandar's uncooperative attitude, Movant's counsel advised the court that Dandar would not testify at the trial because he "chose" not to do so. (Doc. No. 799 at 10.)

Additionally, the government argues that Movant has not shown any prejudice stemming from his counsel's failure to serve a trial subpoena upon attorney Dandar, particularly under these circumstances because Dandar's purported opinion that 5-F-UR-144 was legal under federal law (for what it was worth) was not redacted from his opinion letter that was indeed admitted into evidence at trial. (*Id*.; Doc. No. 799-3) Not only was Dandar's January 11, 2013 email to Movant Way with Dandar's letter regarding the "Legal Status of 5-F-UR-11" admitted into evidence at trial, several witnesses testified about Dandar's purported opinion at Movant's trial.[9] (Doc. No. 799 at 10–11.) As the government points out, Movant himself testified at his trial that in his view Dandar's letter "clearly" stated that XLR11 (aka 5-F-UR-144) was legal under federal law. (*Id*. at 10.) In addition, government witness Charles Burton Ritchie, who had earlier owned Zencense, testified that he had retained Dandar who had informed him that XLR11 was fully legal and that he had advised Movant Way that he could rely on Dandar's opinions. Ritchie also testified that he shared with Movant Way his discussions with DEA Special Agent Claude Cosey who had told Ritchie that he was not going to interfere with Ritchie's business, presumably because it did not violate federal law, and that he would let Ritchie know if the laws changed. (*Id*.)

Based on this record, Movant has made no plausible showing that his trial counsel provided ineffective assistance by failing to investigate, locate and serve a trial subpoena upon the uncooperative Dandar who had indicated he would not testify on Movant's behalf. *See U.S. ex*

---

[9] The undersigned refers to Dandar's "purported opinion" regarding the status of 5FUR-11 because of the vague and obtuse nature of his letter. As the government argues, Dandar's letter placed qualifiers on any opinion expressed therein. (Doc. No. 799 at 10.) Nonetheless, the letter did indicate that in the author's opinion under federal law as enacted by the "U.S. Congress" as of January 9, 2013, 5FUR-144 was legal. (Doc. No. 799-3 at 3–4.) Movant Way on January 18, 2013 instructed that the letter be kept in the ZenBio "compliance files." (*Id*. at 2.)

1    *rel. Partee v. Lane*, 926 F.2d 694, 702 (7th Cir. 1991) (concluding that defense counsel did not

2    render a deficient performance by failing to serve a trial subpoena upon an uncooperative and

3    elusive witness who ultimately failed to appear to testify, while noting that choosing not to

4    subpoena a witness is normally within the purview of allowable strategy for trial counsel to

5    decide); *see also Servin v. McDaniel*, 368 F. App'x 778, 780 (9th Cir. 2010) (affirming denial of

6    habeas relief regarding the petitioner's claim that his "counsel was constitutionally ineffective in

7    failing to subpoena a potential witness" where the potential testimony was of "questionable

8    reliability").  Accordingly, the court finds that Movant's trial counsel was not ineffective or

9    deficient for choosing not to further pursue or take efforts to subpoena such a witness and that

10   relying instead on the evidence regarding the "legal opinion" that was presented at trial was

11   certainly a reasonable trial strategy.

12        Movant has also failed to demonstrate that he was prejudiced by Dandar's absence as a

13   witness at trial.  *See Jordan v. Sheets*, No. 2:10-cv-00034, 2012 WL 553091, at *23 (S.D. Ohio

14   Feb. 21, 2012) ("[A] counsel's decision regarding the calling of witnesses is within the purview

15   of trial strategy, and the failure to subpoena witnesses for trial does not violate counsel's duty to

16   defendant absent a showing of prejudice.")  "To establish prejudice caused by the failure to call a

17   witness, Petitioner must show the witness was likely to have testified if called; the witness would

18   have given the proffered testimony; and the witness's testimony would have created a reasonable

19   probability that the jury would have reached a verdict more favorable to Petitioner."  *Boyle v.

20   Kernan*, No. 3:16-cv-0469-BAS-PCL, 2017 WL 6327066, at *21 (S.D. Cal. Dec. 8, 2017), *report

21   and recommendation adopted sub nom. Boyle v. Harris*, No. 16-cv-00469-BAS-PCL, 2018 WL

22   1478235 (S.D. Cal. Mar. 27, 2018) (citing *Alcala v. Woodford*, 334 F.3d 862, 872–73 (9th Cir.

23   2003)); *see also United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (finding no prejudice

24   where the defendant-appellant "offer[ed] no indication" of what various witnesses "would have

25   testified to, or how their testimony might have changed the outcome").  Here, Movant has made

26   no showing that Dandar was likely to have testified even if successfully served with a trial

27   /////

28   /////

subpoena.[10]  In this regard, the government notes that in a 2017 trial in federal court in Missouri involving XLR11, Dandar was subpoenaed by the defense in support of their advice of counsel defense but Dandar advised defense counsel that he intended to invoke his rights under the Fifth Amendment and was ultimately not called to testify.  (Doc. No. 799 at 16–17.)  In addition, there has been absolutely no showing that if Dandar had testified, his testimony would have been helpful to Movant's defense.  Finally, the court is completely unpersuaded that any testimony Dandar could conceivably have provided about his review of ZenBio before reaching his legal opinion would have had any reasonable probability of swaying the jury in Movant's case.  As noted above, the record demonstrates that Dandar's opinion that 5-F-UR-144 was legal under federal law was not redacted from his letter which was admitted into evidence at Movant's trial.  (Doc. No. 799-3 at 3–4.)  Again, Movant testified at trial that the letter clearly indicated that Dandar advised him of the legality of the substance that was being used in the manufacture of the ZenBio products:

> Q:  Okay.  And go to the next page, if you would.  Does, just simply stated, does Mr. Dandar express an opinion as to the legality of the substance under federal law?
>
> A.  Yes.  It clearly states, "Legal."
>
> Q.  And he references not necessarily federal, but U.S. Congress, United States Congress?
>
> A.  Correct.
>
> Q.  And there is other information in there that relates to his opinion and -- is there not?
>
> A.  Quite a bit, yes.
>
> Q.  Okay.  And at the conclusion of -- I'm going to offer this, your Honor.  It's D-23.

---

[10]  The court notes that despite the passage of years since the trial of this action it is clear that Movant's current counsel in these proceedings has still been unable to make contact with Dandar.  (Doc. No. 797 at 17) ("The undersigned, with the tools available to him now, has not been able to obtain a statement from Attorney Dandar.")  Because Dandar has remained steadfastly uncooperative in aiding Movant, his current counsel remains in the same place as his trial counsel found themselves—not knowing what Dandar would testify to if called and forced to testify over his objection.

1      THE COURT:  Any objection as redacted?

2      MS. ESCOBAR:  No, your Honor.

3      THE COURT:  D-23, as redacted, is admitted.

4  (Doc. No. 799-2 at 43.)  Movant also testified that Dandar personally advised him that ZenBio's

5  products were legal.  (Doc. No. 799-2 at 40.)  Therefore, there was ample evidence introduced at

6  trial for the jury to consider supporting Movant's asserted belief that the product he was

7  distributing was legal.  The court finds that Movant has not demonstrated that his defense was

8  prejudiced without testimony from Dandar explaining the background information that he

9  considered in forming his opinion in this regard.  *See Dotson v. Perez*, No. 13-cv-03211-JEM,

10 2014 WL 2452901, at *9 (C.D. Cal. June 2, 2014) (finding that the "defendant suffered no

11 prejudice by his counsel's failure to call" a witness whose "testimony was insufficient to create a

12 reasonable doubt").  This conclusion is particularly appropriate in a case such as this one where

13 the Ninth Circuit, in affirming Movant's conviction on appeal, has already found that "[t]he trial

14 record reveals overwhelming evidence of Way's knowledge of analogue status."  (Doc. No. 768

15 at 9).  *See United States v. James*, 2 Fed. Appx. 814, 816 (9th Cir. 2001) ("We conclude,

16 however, that counsel's failure to call the witnesses did not prejudice James' defense in light of

17 the overwhelming evidence of guilt presented at trial."); *see also Tinsely v. Borg*, 895 F.2d 520,

18 532 (9th Cir. 1990) (concluding that the petitioner had failed to show prejudice based upon his

19 counsel's failure to call certain witnesses because the evidence was "insufficient to create a

20 reasonable probability that the jury would have had a reasonable doubt" as to the petitioner's

21 guilt).

22      Relatedly, in his Claim Seven, Movant argues that he received ineffective assistance when

23 his appellate counsel, attorney Quinlan, argued on appeal that Dandar's opinion letter should have

24 been admitted into evidence in its entirety, without redaction of the sections addressing the

25 legality of 5-F-UR-144 under the law in all 50 states, because the redacted section of the letter

26 was relevant evidence as to Movant's efforts to comply with all laws.  (Doc. No. 797 at 27; 797-1

27 at 48.)  On appeal, the Ninth Circuit rejected this contention, finding no error in the court's

28 redaction of the letter to eliminate reference to state law because Movant was not charged with

violating state law.  *See Way*, 804 F. App'x at 510 ("The district court found evidence of state law compliance irrelevant to a case involving only federal law charges.  We agree that the defendant's efforts to comply with state law are irrelevant to charges of violating federal law.").  Movant now argues that it was ineffective for his appellate counsel to have argued about Movant's efforts to comply with state law, as it "would have been a far stronger argument against the exclusion" if his attorney had argued that the letter should have been admitted in its entirety because it expressed the opinion that 5-F-UR-144 was "federally legal."  (Doc. No. 797 at 27.)  As already discussed above, the undersigned finds this argument advanced by Movant to be completely misguided in that it is based on a premise totally at odds with the record in this case.  The portion of Dandar's letter expressing the qualified opinion that, as of January 9, 2013, 5-F-UR-144 was legal under federal law **was not redacted, was admitted into evidence, and was testified to by Movant and others**.  (Doc. No. 799-3 at 3–4.)  Movant's claim that his appellate counsel was ineffective in failing to advance an argument about improper exclusion as to evidence that was not in fact excluded has no merit.  Accordingly, the court concludes that Movant has not demonstrated that his appellate counsel was deficient in this regard.  For the same reasons, Movant has also not demonstrated that he was prejudiced in any way on appeal by his counsel's approach as to this issue.

**B.    Claim Two**

In Claim Two, Movant argues that his trial lawyers were ineffective for failing to adequately prepare a defense expert prior to his trial testimony.  (Doc. No. 797 at 17.)  At Movant's trial, the defense called Dr. Gregory Dudley, a professor in Florida State University's Department of Chemistry and Biochemistry, as an expert witness to testify on the issue of the lack of structural similarity between cannabis and XLR11.  (*Id*. at 9.)  However, according to Movant, Dr. Dudley's testimony regarding the definition of "structural similarity" was flawed in some respects.  (*Id*. at 10.)  On cross-examination the government was able to elicit testimony from Dr. Dudley that he relied in part on the findings of a Dr. Neil Garg, who had previously concluded that XLR11 is not substantially similar to the controlled substance JWH-018.  (Doc. No. 799 at 17.)  Notably, Dr. Dudley conceded in response to the government's line of questioning that Dr.

13

1    Garg had depicted the incorrect structure of JWH-018 in forming that opinion.  (*Id*. at 17–18.)

2    Movant now argues that his trial counsel was ineffective because they did not meet with Dr.

3    Dudley prior to trial to review his report and anticipated testimony so as to ensure that there were

4    no inconsistencies in that testimony nor reliance on incorrect data.  (Doc. No. 797 at 10.)

5          In responding to this claim, the government contends that according to attorney Quinlan's

6    declaration, defense counsel did in fact meet with Dr. Dudley to review his testimony prior to

7    trial.  (Doc. No. 798 at 3.)  Contrary to Movant's argument in this regard, attorney Quinlan

8    merely states in his declaration that during the trial preparation he simply "did not catch" Dr.

9    Garg's error in his chemical structural depiction of controlled substance JWH-018 and therefore

10   did not discuss that issue with Dr. Dudley in preparing him to testify.  (*Id*.)  The government

11   argues that, in any event, Movant has failed to demonstrate deficient performance on the part of

12   his trial counsel because there has been no showing that a reasonable attorney would have thought

13   to question Dr. Dudley about Dr. Garg's structural depictions.  (Doc. No. 799 at 18.)  In this

14   regard, the government notes that Westlaw databases reveal no other case materials involving Dr.

15   Garg, and internet searches do not reveal any materials related to Dr. Garg's views on JWH-018

16   or suggesting that his depictions of the chemical structure of that compound were incorrect.  (*Id*.)

17   Further, and in the undersigned's view most persuasive, the government argues that Movant has

18   failed to demonstrate prejudice.  This is because Dr. Dudley based his own opinion regarding the

19   lack of structural similarity between cannabis and XLR11 only in part on the work of a number of

20   other experts, including Dr. Garg.  (*Id*. at 18–19.)  Critically, Dr. Dudley used his own three-

21   dimensional models to demonstrate the chemical structure of the relevant compounds and in

22   forming his own expert opinion.  (*Id*.)  The accuracy of Dr. Dudley's three dimensional

23   depictions of the chemical structure of those compounds were not challenged on cross-

24   examination by the government.  (*Id*. at 18)  Finally, the government notes that the defense called

25   a second chemical expert, Dr. Berrier, to testify on this same topic who did not rely at all on Dr.

26   Garg's work in reaching his own opinion that XLR11 is not substantially similar to the controlled

27   substance JWH-018.  (*Id.* at 19.)

28   /////

1    In light of this record, the court finds that Movant has failed to satisfy the two-pronged

2 ineffective assistance of counsel test set out in *Strickland* as to this claim.  Movant has cited no

3 authority supporting his contention that attorney Quinlan's failure to catch a relatively obscure

4 error in one of the papers upon which a defense expert would rely in his trial testimony

5 constitutes ineffective assistance.  The cases upon which Movant relies in arguing otherwise are

6 clearly distinguishable because the errors at issue in those cases were much more obvious and

7 significant to resolution of key issues presented at trial in those cases.  *See Sturgeon v.*

8 *Quarterman*, 615 F. Supp. 2d 546, 569 (S.D. Tex. 2009) (finding the defendant was entitled to

9 relief where his attorney, despite the "well-known legal standard for admitting expert testimony,"

10 did not prepare the expert witness with facts of the case or materials pertinent to the case, and as a

11 result the expert testimony was excluded at trial and the defendant "was denied the opportunity to

12 present evidence regarding the reliability of the identification made by the state's sole

13 eyewitness"); *Tillery v. United States*, 419 A.2d 970, 974 (D.C. 1980) (reversing the defendant's

14 conviction where his trial counsel predicated the entire defense strategy on the wrong legal

15 standard for insanity, failed to examine his client's medical records, only spoke with the sole

16 defense psychiatrist on one occasion for only twenty minutes on the day before trial, and "never

17 inquired about the factual basis for the psychiatrist's opinion").

18    Here, Movant has not demonstrated any similarity between the facts presented in the cited

19 cases where the failures of defense counsel were clear, obvious and significant and this case.

20 Defense counsel's meeting with Dr. Dudley in preparation for his trial testimony but failing to

21 realize and inquire about his limited reliance on part of Dr. Garg's work which included a faulty

22 depiction of the structure of JWH-018, does not rise to the level of constitutionally deficient

23 performance.  Moreover, Movant has failed to establish that he suffered any prejudice as a result.

24 *See Romero v. McDowell*, 2021 WL 3214595, at *1 (9th Cir. 2021) (petitioner was not entitled to

25 relief as to ineffective assistance of counsel claim because pointing to "minor, non-material

26 errors" failed to support a finding of prejudice); *Dow v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000)

27 ("minor mistakes" by counsel do not amount to unreasonable conduct nor do they support a

28 finding of prejudice).

1    **C.    Claim Three**

2        In Claim Three, Movant argues that his trial attorneys were ineffective for failing to object

3    to, or moving to strike, the testimony of the government's two chemical expert witnesses on the

4    similarity of XLR11 and cannabis, based upon the lack of an adequate basis for their opinions.

5    (Doc. No. 797 at 9.)  Movant argues that government expert Dr. Coop's opinion as to the

6    definition of "substantial similarity" for the purposes of comparing chemical compounds was

7    unsupported by any peer review, validation testing, error rate, or scientific consensus.  (*Id.*)

8    Movant also contends that the government's rebuttal expert witness, Dr. Willenbring, did not

9    provide any adequate basis for his opinion that XLR11 was structurally similar to cannabis.  (*Id.*)

10        The government counters movant's arguments in this regard, first explaining that Dr.

11    Coop was not a chemical expert but a pharmacological expert who testified that XLR11 was

12    substantially similar in its pharmacological effect to the controlled substance JWH-018.  (Doc.

13    No. 799 at 20–21.)  Regardless, the government argues that Movant has not demonstrated that his

14    attorneys were deficient for failing to object or move to strike Dr. Coop's and Dr. Willenbring's

15    trial testimony.  The government notes that according to attorney Quinlan's declaration, he did

16    not object or move to strike their trial testimony because he had already raised identical

17    objections in the defense pretrial motions and the court had overruled the defense objections.  (*Id.*

18    at 21; Doc. No. 798 at 3.)  Further, the government notes that on appeal the Ninth Circuit found

19    that the trial court did not abuse its discretion in admitting this expert testimony, suggesting that

20    any defense objection to it would have been futile.  (*See* Doc. No. 799 at 21) (citing *Way*, 804 F.

21    App'x. at 510–11).

22        The court concludes that Movant has failed to show that his trial counsel was deficient in

23    failing to raise objections during trial as to the foundation and basis for the expert testimony of

24    Dr. Coop and Dr. Willenbring.  This conclusion is buttressed by the fact that defense counsel

25    raised and preserved the defense objections to that testimony by way of a *Daubert* motion prior to

26    trial which the undersigned denied.  (*See* Doc. No. 797-1 at 43.)  The court also finds that for the

27    same reasons Movant has failed to establish that he suffered any prejudice as a result of his

28    counsel not repeating his objection again during the trial testimony of these government expert

1   witnesses.  While the Ninth Circuit noted that the district court should have "expressly analyze[d]

2   the *Daubert* factors to some extent on the record" with respect to the government's expert

3   witnesses, the appellate court also found that the undersigned's failure to do so "was harmless

4   because the record clearly demonstrates that the admitted expert testimony was relevant and

5   based on reliable scientific methodology given the experts' academic and professional experience

6   and the nature of their testimony." *Way*, 804 F. App'x. at 509–10.  Therefore, the court concludes

7   that Movant's trial counsel did not provide ineffective assistance by failing to re-raise an

8   objection that the trial court had already denied to testimony that the Ninth Circuit ultimately

9   found was appropriately admitted.

10  **D.**     **Claims Four and Six**

11          In his Claim Four, Movant argues that his trial counsel rendered deficient performance in

12  failing to object to Jury Instruction No. 22 on the ground that it constructively amended Count

13  Two of the second superseding indictment in this case.  (Doc. No. 797 at 19–21.)  In Count Two

14  Movant was charged with knowingly and intentionally manufacturing, and aiding and abetting the

15  manufacture of, mixtures or substances containing a detectable amount of one or more of the

16  following:  XLR11 and AM-2201.  (Doc. No. 196 at 8.)  As to that charge, Jury Instruction No.

17  22 given in this case stated:

18                 In order for the defendant to be found guilty of that charge, the
19          government must prove each of the following elements beyond a
        reasonable doubt:

20                 First, the defendant knowingly manufactured a substance
21          containing a detectable amount of AM- 2201, a controlled substance;
        or 5-F-UR-144, a controlled substance analogue; and

22                 Second, the defendant knew that the substance contained a
23          detectable amount of AM-2201, 5-FUR-144, *or some other federally
        prohibited substance*.

24  (Doc. No. 659 at 37) (emphasis added).  Movant argues that his counsel's failure to object to this

25  instruction, and in particular the italicized portion of it which he contends allowed the jury to

26  convict him based on any federally prohibited substance and not just XLR11 and AM-2201, was

27  deficient.  (Doc. No. 797 at 19–21.)

28  /////

                                                    17

1    In opposition, the government first notes that the court's instruction as given was

2    consistent with the Ninth Circuit's model jury instruction for distribution or manufacture of a

3    controlled substance.[11]  (Doc. No. 799 at 22); *see also* Ninth Circuit Committee on Model

4    Criminal Jury Instructions, *Manual of Model Criminal Jury Instruction for the District Courts of*

5    *the Ninth Circuit*, 235 (2022).  The government also notes that in his declaration, attorney

6    Quinlan states that he did not object to the italicized portion of the instruction above because it

7    did not, in his view, broaden the indictment, and no argument was made to the jury at Movant's

8    trial that the case involved any substance other than AM-2201 and 5-F-UR-144.  (Doc. No. 798 at

9    3.)  Finally, the government argues that even though the second superseding indictment specified

10    XLR11 and AM-2201 as the substances that Movant manufactured, the jury was not required to

11    find that Movant himself knew what type of drug he had manufactured.  (Doc. No. 799 at 23)

12    (citing *United States v. Jefferson*, 791 F.3d 1013, 1015 (9th Cir. 2015) ("The government is not

13    required to prove that the defendant knew the type or quantity of the controlled substance . . . .")).

14    Accordingly, the government asserts, the instruction as given pertaining to Movant's knowledge

15    was appropriate.

16    Movant has not demonstrated that his counsel's performance was deficient for failing to

17    object to the italicized portion of Jury Instruction No. 22.  As noted, the language used in the

18    court's instruction to the jury matched the Ninth Circuit's pattern instruction for distribution or

19    manufacture of a controlled substance and did not expand the operative indictment.  *See United*

20    *States v. Soto–Zuniga*, 837 F.3d 992, 1005 (9th Cir. 2016) ("We conclude that Soto–Zuniga's

21    knowledge of the type and quantity of the drugs found in his car is not an element under 21

22    U.S.C. § 841.)  Because the jury was correctly instructed on this point, Movant has also not

23    demonstrated that he was prejudiced by the giving of the instruction.  The court notes that the jury

24    at Movant's trial was further instructed on the knowledge requirement with respect to Count Two

25    in Jury Instruction No. 26, and the verdict form required the jury, as to any count in which they

26

27    [11]  The government notes that at the time of trial, the relevant Ninth Circuit pattern instruction
       was numbered 9.18.  Now, the Ninth Circuit has renumbered the instruction to 12.4.  (Doc. No.
28    799 at 19 n.6.)

1    found Movant guilty, to identify which substance (specifically AM-2201 and/or 5-F-UR-144) that

2    they unanimously agreed was involved as to that count of conviction.  (Doc. Nos. 657 at 1–4; 659

3    at 41–42.)  Accordingly, Movant has not satisfied either prong of *Strickland* as to this claim.

4         Relatedly, in his Claim Six Movant argues that his appellate counsel was ineffective for

5    failing to raise on appeal the argument that Jury Instruction No. 22 constructively amended the

6    second superseding indictment.  (Doc. No. 797 at 23.)  He contends that such an argument would

7    have been more meritorious than those issues that were raised by his counsel on appeal.  (*Id*.)

8    Regardless of the relative merits of issues raised and not raised on appeal, given that the court has

9    found this argument to be without merit, the court also holds that Movant's appellate attorneys

10    were not ineffective for failing to present it, nor was Movant prejudiced by the failure to do so.

11    **E.    Claim Five**

12         In Claim Five, Movant argues that his trial lawyers were deficient for failing to object

13    when the government argued that the jury should determine whether XLR11 was a controlled

14    substance analogue "based upon reason and common sense," rather than based on science.  (Doc.

15    No. 797 at 21.)  Movant concedes that the determination of substantial similarity for the purpose

16    of finding an analogue is ultimately for the jury rather than the scientists to make.  That

17    concession is appropriate.  *See Way*, 804 F. App'x at 509 ("[T]he Analogue Act cases require the

18    jury to decide whether a substance is a controlled substance analogue based on the expert

19    testimony presented at trial."); *see also United States v. Lane*, No. 12-cr-01419-PHX-DGC, 2021

20    WL 1345698, at *11 (D. Ariz. Apr. 12, 2021) ("The issue was whether the analogues charged in

21    this case were structurally substantially similar, and the jury was well equipped by the evidence to

22    make that decision, including considering 3D analysis if relevant."), *aff'd*, No. 21-15828, 2023

23    WL 3018067 (9th Cir. Apr. 20, 2023).  Nonetheless, he argues that determination by the jury

24    must be grounded in scientific evidence and that the government "went too far" in arguing to the

25    jury as follows:

26         We believe that our experts were extremely credible and their views
         supported by the science, not by, again, money.  They don't decide.
27         Dr. Ghozland told you yesterday, and she emphasized this point.  The
         jury decides.  The scientists do not decide.  *You decide based upon*
28         *reason and common sense.*  You don't have to be a scientist or a

19

1    chemist or anyone with a background in science, chemistry or
     advanced logic.

2

3    You are the arbiters of the facts. You are the one that decides in this
     case was 5-F-UR-144 substantially similar?

4    (Doc. No. 799-7 at 3–4) (emphasis added). Movant argues that this closing argument was an

5    invitation to the jury to substitute its "gut feeling" for scientific proof. (Doc. No. 797 at 22.)

6      The government responds, arguing that the italicized language above is a correct statement

7    of the law. (Doc. No. 799 at 25.) In this regard, the government first points to attorney Quinlan's

8    declaration in which he explains why he did not object to this portion of the government's closing

9    argument. *See* Doc. No. 798 at 3 ("In my view this was not error. It may be debated that juries

10   should not decide which of the two scientific opinions is correct, but that is what happens during

11   a jury trial. They make that decision using reason and common sense, as argued by the

12   prosecution and the defense."). The government next points to case law, including the Ninth

13   Circuit's decision affirming Movant's conviction on appeal, in which courts have consistently

14   explained the manner in which the jury is to decide substantial similarity to a controlled substance

15   in a criminal prosecution involving potential analogues. *See Way*, 804 F. App'x at 509 ("The

16   district court ruled that since the jury would decide what was a controlled substance analogue,

17   any internal DEA disagreement as to whether 5-F-UR-144 was an analogue was irrelevant. We

18   agree with the district court."); *United States v. Requena*, 980 F.3d 30, 47 (2d Cir. 2020) (noting

19   that "substantial similarity is not itself a scientific standard" and "the actual determination of

20   substantial similarity is not a scientific one"); *Lane*, 2021 WL 1345698, at *6 ("Because

21   substantial similarity is not a technical term, but a matter to be decided by the jury on the basis of

22   the ordinary meaning of those words, the fact that chemists within DEA may disagree on

23   substantial similarity has not been viewed by courts as particularly relevant.").

24     The government's argument in this regard is persuasive. Movant has failed to

25   demonstrate that his trial counsel was ineffective for not objecting during this portion of the

26   government's closing argument. The court also notes that the jury was given approximately three

27   pages of instructions which specifically guided them in their deliberations as to whether 5-F-UR-

28   144 was a controlled substance analogue. (Doc. No. 659 at 33–35.) In this regard, the jury was

1   instructed in accordance with the law that "[t]he term 'substantially similar' . . . has no special

2   meaning other than how it is used in everyday language" and that the jury should "determine

3   whether 5-FUR-144 was a controlled substance analogue based on . . . the evidence that has been

4   presented . . . in this case." (*Id.* at 34–35.)  Even if the jury understood the government's closing

5   argument as an "invit[ation] . . . to substitute its gut feeling for scientific proof," as Movant

6   argues it was, the court's jury instructions served to appropriately guide their deliberations on this

7   subject. (Doc. No. 797 at 22.)  Accordingly, the court also concludes Movant has not

8   demonstrated that he suffered any prejudice by his counsel's failure to object to this aspect of the

9   government's closing argument.

10      Finally, Movant suggests that cumulative error resulting from the ineffective assistance of

11  counsel he claims to have received entitles him to relief.  (Doc. No. 802 at 11.)  Above, the court

12  has determined that each of Movant's claims of ineffective assistance of counsel lack merit.  In

13  light of that finding, any claim of cumulative error lacks merit as well.  *See United States v.*

14  *Banks*, 2022 WL 3278942, at *2 (9th Cir. 2022) (citing *United States v. Martinez-Martinez*, 369

15  F.3d 1076, 1090 (9th Cir. 2004)).

16                                              **CONCLUSION**

17      For the reasons set forth above, the court concludes that Movant is not entitled to a

18  hearing on the pending motion because he has not raised any factual disputes regarding his

19  counsel's performance that require an evidentiary hearing to resolve or that would entitle him to

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1    relief if decided in his favor.  *See West*, 608 F.3d at 489.  Accordingly, the pending § 2255 motion

2    must be denied.[12]

3        Having concluded that the pending § 2255 motion must be denied, the court will also

4    decline to issue a certificate of appealability.  In this regard, a movant cannot appeal from the

5    denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability.

6    *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  To obtain a certificate of appealability under 28

7    U.S.C. § 2253(c), a movant "must make a substantial showing of the denial of a constitutional

8    right, . . . includ[ing] showing that reasonable jurists could debate whether (or, for that matter,

9    agree that) the [motion] should have been resolved in a different manner or that the issues

10   presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529

11   U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Here,

12   movant has failed to make the required showing.  Thus, the court declines to issue a certificate of

13   appealability.

14       Accordingly,

15       1.    Movant's motion to vacate, set aside, or correct his sentence (Doc.

16             No. 790) pursuant to 28 U.S.C. § 2255 is DENIED without hearing;

17   /////

18   /////

---

19

20   [12]  The undersigned does pause to observe that Movant Way has now served approximately 56.5 months of his 132 month term of imprisonment and, according to the U.S. Bureau of Prisons website, has a projected release date of January 14, 2029, about 44 months from now.  Movant's co-defendants in this case were sentenced to terms of imprisonment/confinement of 36 months, 30 months and 4 months.  In addition, the last owner of Zencense (the predecessor of ZenBio), Victor Anthony Nottoli, was sentenced to a 6 month term of imprisonment and had his 36 month term of supervised release terminated early.  *See* 1:14-cr-00097, Doc. Nos. 66, 67, 70.  Finally, according to the Bureau of Prisons' website, Charles Burton Ritchie who owned Zencense and operated it for an extended period of time while amassing huge profits was released from Bureau of Prisons custody on November 30, 2023.  The court understands that the circumstances of each individual's case are different and that relevant factors present in one may not be present in another.  In addition, the undersigned is unaware of Movant Way's conduct or progress with respect to rehabilitation since he began serving his sentence in or about September of 2020.  Nonetheless, the court does note that under 18 U.S.C. § 3582(c)(1)(A), guided by U.S.S.G. § 1B1.13, the court may grant compassionate release or reduce a sentence based upon a defendant's motion demonstrating "extraordinary and compelling reasons" for doing so.

2.     Movant's motion for reassignment from the "NODJ" docket to an active district judge (Doc. No. 805) is DENIED as having been rendered moot in light of the court's reassignment order (Doc. No. 806);

3.     The court DECLINES to issue a certificate of appealability under 28 U.S.C. § 2253(c); and

4.     The Clerk of the Court is directed to once again CLOSE this case.

IT IS SO ORDERED.

Dated:   __May 15, 2025__         _____

DALE A. DROZD
UNITED STATES DISTRICT JUDGE